[No. D041452. Fourth Dist., Div. One. June 17, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
PATRICK ROBERT MULLENS, Defendant and Appellant.

**COUNSEL**

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela A. Ratner Sobeck and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NARES, Acting P. J.**—In this case, we hold that in a sex offense prosecution in which the trial court has admitted Evidence Code[1] section 1108 propensity evidence that the defendant has committed an uncharged sex offense, it is error to exclude admission of evidence that the defendant has been acquitted of that offense, and such error is reversible if it is prejudicial under the *Watson* harmless error test (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]). We conclude, as we shall explain, there is prejudicial error, and reverse the judgment. We reject the remaining legal contentions.

## INTRODUCTION

### A. *Prior Prosecution*

In a five-count amended information, the District Attorney of San Diego County originally charged Patrick R. Mullens with four counts of committing a lewd act upon his stepdaughter, S.S., a child under the age of 14 years, in violation of Penal Code section 288, subdivision (a) (hereafter Penal Code section 288(a)) and one count of committing a lewd act upon V.A., a child under the age of 14 years, by kissing her on the mouth in violation of Penal Code section 288(a).

### B. *Mistrial*

In March 2002, a jury found Mullens not guilty as to the alleged offense against V.A., and deadlocked by an eight-to-four vote in favor of not guilty as to the alleged sex offenses against S.S. The court declared a mistrial as to the alleged offenses against S.S. and set the cause for a retrial.

### C. *Retrial*

In a second amended information, the district attorney realleged the counts involving S.S., charging Mullens again with four counts of committing a lewd act upon S.S. in violation of Penal Code section 288(a). Because the first jury had acquitted Mullens of the sole count alleged as to V.A. in the first trial, the new accusatory pleading alleged no offense against her.

1. *In limine rulings allowing propensity evidence of uncharged sexual offenses against V.A., T.W. and S.S.*

Mullens filed a motion in limine to exclude evidence of several uncharged sexual offenses (i.e., allegedly "french-kissing" V.A., caressing the thigh of

---

[1] All further statutory references are to the Evidence Code unless otherwise specified.

and attempting to kiss on the lips another minor, T.W., and asking S.S. to flash him), claiming that admission of such propensity evidence under section 1108 would violate his rights to due process and equal protection. He also claimed that, assuming section 1108 was constitutional, such evidence should be excluded under section 352 (discussed, *post*).

The court denied Mullens's in limine motion, ruling that (1) V.A.'s testimony was admissible as section 1108 propensity evidence, and it was not inadmissible under section 352; (2) T.W.'s testimony about the caressing of her thigh was admissible as propensity evidence under section 1108, but her testimony about Mullens's attempt to kiss her did not constitute admissible propensity evidence under section 1108 and was inadmissible under section 1101; and (3) S.S.'s testimony about Mullens's alleged request that she flash him was evidence that he was soliciting a lewd act from a child, it was admissible as propensity evidence under section 1108, and it was not inadmissible under section 352.

2. *In limine ruling excluding evidence of Mullens's acquittal of the alleged offense against V.A.*

During the in limine proceedings, the defense also requested leave to present to the jury a certified verdict form showing that the previous jury in the first trial acquitted Mullens of committing the alleged Penal Code section 288(a) offense against V.A. Defense counsel argued that the not guilty verdict was probative to show that a jury in a previous trial had decided the People had failed to prove beyond a reasonable doubt that Mullens committed a lewd act, french-kissing V.A. The court ruled that such acquittal evidence was inadmissible because it was only relevant to impeach a witness's testimony, and the court was aware of no authority that would allow the defense to present acquittal evidence as "evidence of impeachment."

3. *Mullens's conviction and sentence*

The second jury found Mullens guilty of all four counts (§ 288(a)). The court sentenced Mullens to the middle term of six years on the principal count and concurrent six-year terms as to each of the remaining counts. Mullens's appeal from the judgment followed.

4. *Mullens's New Trial Motion*

Mullens moved for a new trial on grounds that the court erroneously excluded evidence that the jury in the first trial had found he was not guilty of committing a lewd act against V.A. in violation of Penal Code section 288(a), and that evidence was "crucial to show that a previous jury either

believed that V.A. was not credible, or that the previous jury believed that the prosecution had failed to carry its burden on that count." The court denied Mullens's new trial motion.

### D. Contentions on Appeal

Mullens contends (1) the court erred in admitting the testimony of V.A. and T.W. because the prejudicial effect of such propensity evidence outweighed its probative value within the meaning of section 352; (2) the court erred in admitting the testimony of V.A. without informing the jury that in the first trial Mullens had been acquitted of the charge of committing a lewd act against V.A.; and (3) the court erred in admitting the propensity evidence involving T.W. because the thigh-touching incident did not constitute an offense under Penal Code section 288(a).

## FACTUAL BACKGROUND

### A. The People's Case

S.S. was five years of age when her mother, Theresa, married Mullens. S.S., her younger sister, and Mullens lived with Theresa in a condominium. S.S. had her own bedroom. Claiming Theresa's bed was too soft and hurt his back, Mullens would sleep on the floor, on a couch, or in S.S.'s bedroom.

S.S. testified that when she was nine years of age, while she was lying on the couch, Mullens sat next to her, took her hand, placed it on his exposed penis, and moved her hand up and down until he ejaculated.

The next incident occurred when she was 10 years of age. At that time she slept on a futon mattress on the floor of her bedroom, and Mullens would sleep next to her every night. On one occasion, Mullens pulled S.S.'s pajama top up, put his mouth on her chest, and licked and sucked her breast.

Another incident occurred when S.S. was 11 years of age. At that time, the futon had been replaced with bunk beds. She slept on the top bunk, and Mullens slept on the bottom. On four or five occasions, Mullens reached up from the bottom bunk, put his hands between her legs over her clothes, and moved his hands around her vaginal area.

Thereafter, the family moved to a house in August 1998. During that time, when S.S. was still 11 years of age, Mullens took her on a camping trip. Inside the tent, Mullens lay next to her, kissed her neck and chest, and rubbed his hands between her legs.

Mullens moved out of the house in November 1998. Theresa filed for divorce a month and a half later.

V.A. and her sister were S.S.'s friends. Shortly after the camping trip, S.S. told them what Mullens had done. After Mullens moved out of the house, V.A., her sister, their father and their brother moved into the house with S.S., her mother Theresa, and S.S.'s two younger sisters.

Around the time of V.A.'s eighth grade graduation in May or June of 1999, Mullens was at the house moving out some of his belongings. He leaned over and french-kissed V.A. The next day, V.A. told her mother about the kiss. V.A.'s mother contacted Theresa and told her what V.A.' had said. Theresa asked S.S. whether Mullens had ever touched her inappropriately, and S.S. said, "No."

When questioned by the police, V.A. first denied that Mullens had french-kissed her, stating that it was just a little peck on the cheek. V.A. later told the officer that the kiss was partly on the lips and partly on the cheek.

T.W. lived next door to her friend S.S. T.W. would frequently visit S.S. T.W. considered Mullens to be her confidant and friend, and she would go over to his house and talk with him.

On one occasion, when T.W. was 14 years of age, she was at the house lying on a mattress with Mullens. Mullens touched her thigh. T.W. did not tell anyone about the incident.

In November 2000, S.S. attended an all-girls counseling session that involved a discussion of sexual molestation. One of the counselors noticed that S.S. was upset and asked her what was wrong. S.S. told them that Mullens had molested her. The counselors called Theresa, and S.S. finally told Theresa what had happened.

B. *The Defense*

Mullens testified that he married Theresa in 1992. He stated that between June 1 and September 3 of 1996, there was never a time when he was alone with S.S. in the condominium.

From April to August of 1997, while he was living in the condominium, Mullens slept in the queen-size bed with Theresa. S.S. slept on a twin bed. During those months he never slept in S.S.'s bedroom. In 1997, there were no bunk beds in S.S.'s room. The bunk bed and futon mattress had been purchased in Washington in January 1996. The furniture, including the bunk bed, was delivered to San Diego from Washington in June 1997 and put into storage. Mullens stated he moved the bunk bed and futon into the condominium in the summer of 1998. He testified further that in 1997 he never stayed with S.S. in her bedroom and he never sucked or licked her breasts or touched her vaginal area.

From January 1998 to June 1998, Mullens slept with Theresa in her bed. He testified that because Theresa's bed hurt his back, she told him to set up the bunk bed and sleep in S.S.'s bedroom. In June 1998, he took the bunk bed out of storage, moved the twin beds out of S.S.'s room, and set up the bunk beds. During June and July of that year, he never lay on the futon and sucked or kissed S.S.'s breasts, nor did he fondle her vaginal area. Mullens also stated he never touched S.S. inappropriately and denied sitting on the bottom bunk bed, reaching up and touching her.

With regard to the camping trip, Mullens testified that Theresa had suggested that he take S.S. on the trip. During that trip, he never touched S.S. inappropriately.

Mullens stated he met V.A. in August 1998. He never kissed her on the lips. He did not see V.A. in May or June of 1999 because he had knee surgery during that period, was unable to drive, and was physically unable to go to the house.

Mullens testified he met T.W. in 1998. He never stroked or rubbed her leg, and he never hugged her on a bed.

Mullens also testified that after he and Theresa separated, he told her he wanted "more custody" of S.S.'s younger sisters. Theresa became upset. Theresa told him three or four times she wanted to get back together with him. She became hysterical when she saw Mullens's girlfriend wearing the wedding ring that Mullens had given to Theresa.

## DISCUSSION

### I

### ADMISSIBILITY UNDER SECTION 352 OF THE SECTION 1108 PROPENSITY EVIDENCE OF UNCHARGED SEX OFFENSES AGAINST V.A. AND T.W.

Mullens first contends the court erred in admitting the testimony of V.A. and T.W. because the prejudicial effect of such section 1108 propensity evidence outweighed its probative value within the meaning of section 352. We reject this contention.

A. *Applicable Legal Principles and Standard of Review*

In *People v. Falsetta* (1999) 21 Cal.4th 903, 911 [89 Cal.Rptr.2d 847, 986 P.2d 182] (*Falsetta*), the California Supreme Court explained that "[a]s a

general rule, evidence that is otherwise admissible may be introduced to prove a person's character or character trait. (§ 1100.) But, except for purposes of impeachment (see § 1101, subd. (c)), such evidence is inadmissible when offered by the opposing party to prove the defendant's conduct on a specified occasion (§ 1101, subd. (a)),[2] unless it involves commission of a crime, civil wrong or other act and is relevant to prove some fact (e.g., motive, intent, plan, identity) *other than a disposition to commit such an act* (§ 1101, subd. (b))."

■ The Legislature enacted section 1108 in 1995 to expand the admissibility of disposition or propensity evidence in sex offense cases. (*Falsetta, supra,* 21 Cal.4th at p. 911.) Section 1108 "allows evidence of the defendant's uncharged sex crimes to be introduced in a sex offense prosecution to demonstrate the defendant's disposition to commit such crimes." (*People v. Reliford* (2003) 29 Cal.4th 1007, 1009 [130 Cal.Rptr.2d 254, 62 P.3d 601] (*Reliford*).)

Subdivision (a) of section 1108 (hereafter section 1108(a)) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."[3]

---

[2] Section 1101, subdivision (a) provides: "*Except as provided* in this section and *in Sections* 1102, 1103, *1108,* and 1109, *evidence of a person's character or a trait of his or her character* (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) *is inadmissible when offered to prove his or her conduct on a specified occasion.*" (Italics added.)

[3] At the time of the offense, section 1108 provided in full: "(a) *In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.* [¶] (b) In an action in which evidence is to be offered under this section, the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least 30 days before the scheduled date of trial or at such later time as the court may allow for good cause. [¶] (c) This section shall not be construed to limit the admission or consideration of evidence under any other section of this code. [¶] (d) *As used in this section, the following definitions shall apply:* [¶] (1) *'Sexual offense' means a crime* under the law of a state or of the United States *that involved any of the following:* [¶] (A) *Any conduct proscribed by Section* 243.4, 261, 261.5, 262, 264.1, 266c, 286, 288, 288a, 288.2, 288.5, or 289, or subdivision (b), (c), or (d) of Section 311.2 or Section 311.3, 311.4, 311.10, 311.11, 314, or 647.6, *of the Penal Code.* [¶] (B) Contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person. [¶] (C) Contact, without consent, between the genitals or anus of the defendant and any part of another person's body. [¶] (D) Deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person. [¶] (E) An attempt or conspiracy to engage in conduct described in this paragraph. [¶] (2) 'Consent' shall have the same meaning as provided in Section 261.6 of the Penal Code, except that it does not include consent which is legally

In *Falsetta, supra,* 21 Cal.4th at page 911, the Supreme Court explained that "[a]vailable legislative history indicates section 1108 was intended in sex offense cases to relax the evidentiary restraints section 1101, subdivision (a) [see fn. 2, *ante*], imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility. In this regard, section 1108 implicitly abrogates prior decisions of this court indicating that 'propensity' evidence is per se unduly prejudicial to the defense. [Citation.]"

Section 352, which is cited in section 1108(a) (see fn. 3, *ante*), provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of *undue prejudice*, of confusing the issues, or of misleading the jury." (Italics added.)

" 'The prejudice which [section 352] is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors. [Citation.]' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 958 [17 Cal.Rptr.2d 122, 846 P.2d 704].)

A trial court has broad discretion in determining whether to admit or exclude evidence objected to on the basis of section 352 (*People v. Ramos* (1997) 15 Cal.4th 1133, 1170 [64 Cal.Rptr.2d 892, 938 P.2d 950]), and rulings under that section will not be overturned absent an abuse of that discretion (*People v. Minifie* (1996) 13 Cal.4th 1055, 1070 [56 Cal.Rptr.2d 133, 920 P.2d 1337]). "[T]he term judicial discretion 'implies absence of arbitrary determination, capricious disposition or whimsical thinking.' " (*People v. Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].) "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered." (*Ibid.*)

■ Under article VI, section 13 of the California Constitution,[4] error in the admission or exclusion of evidence warrants reversal of a judgment only if an examination of " 'the entire cause, including the evidence,' " discloses

ineffective because of the age, mental disorder, or developmental or physical disability of the victim." (Stats. 1995, ch. 439, § 2, p. 3429, italics added.)

[4] Article VI, section 13 of the California Constitution provides: *"No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence,* or for any error as to any matter of pleading, or for any error as to any matter of procedure, *unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."* (Italics added.)

the error produced a " 'miscarriage of justice.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 173 [77 Cal.Rptr.2d 870, 960 P.2d 1094], italics omitted.) Article VI, section 13 eliminated the prior appellate presumption that any substantial trial error causes a miscarriage of justice. (*Breverman, supra,* 19 Cal.4th at p. 173, citing *People v. Cahill* (1993) 5 Cal.4th 478, 501 [20 Cal.Rptr.2d 582, 853 P.2d 1037].)

█ Under the harmless error test in *People v. Watson, supra,* 46 Cal.2d at page 836, "a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (See also *Breverman, supra,* 19 Cal.4th at p. 174.) Error in the admission or exclusion of evidence following an exercise of discretion under section 352 is tested for prejudice under the *Watson* harmless error test. (See *People v. Alcala* (1992) 4 Cal.4th 742, 790–791 [15 Cal.Rptr.2d 432, 842 P.2d 1192].)

B. *Analysis*

1. *V.A.*

Mullens asserts that the court should have excluded V.A.'s testimony because the french-kissing incident was not similar to the charged sex offenses against S.S. Mullens also maintains that the probative value of V.A.'s testimony "was decreased by the dissimilarities between the charged and uncharged offenses," and her testimony showed she was infatuated with Mullens. He also asserts the probative value of her testimony was decreased because she did not report the kissing incident "at a time when she had no knowledge of the charged offenses."

We conclude that the court did not abuse its discretion by finding that V.A.'s testimony about the alleged french-kissing incident when she was 13 years of age was admissible as propensity evidence under section 1108. In *People v. Frazier* (2001) 89 Cal.App.4th 30, 40–41 [107 Cal.Rptr.2d 100], the Court of Appeal explained that "[t]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under . . . section 1101, otherwise . . . section 1108 would serve no purpose." Recently, in *Reliford, supra,* 29 Cal.4th at page 1012, fn. 1, the California Supreme Court stated it has not reached the issue of whether uncharged sex acts must be similar to the charged offenses in order to support the inference that the defendant has a disposition to commit sex crimes from evidence the defendant has committed other sex offenses.

V.A.'s testimony was probative on the issue of whether Mullens had a propensity for engaging in lewd acts with children in 1999 when he allegedly

french-kissed her, and in 1996–1998 when he allegedly committed the sex crimes against S.S. that were at issue in the retrial. Any dissimilarities between the alleged french-kissing incident and the alleged sex offenses against S.S., any evidence that V.A. was infatuated with Mullens, and any delay in reporting the incident went to the weight, not the admissibility, of V.A.'s testimony.

The court also did not abuse its discretion by finding that V.A.'s testimony was not inadmissible under section 352. Her testimony was not unduly prejudicial. During the retrial, the jury heard evidence that Mullens engaged in multiple sex acts with S.S. in which he fondled her breasts and vaginal area, kissed her breast, and made her masturbate him. V.A.'s testimony about the kiss thus cannot be viewed as unduly inflammatory in light of the other evidence of lewd behavior.

### 2. T.W.

Mullens also claims the court erred by permitting T.W. to testify that he touched her thigh on one occasion at the house when she was 14 years of age. He maintains that "touching T.W.'s thigh was even more dissimilar from the incident with S.S. as was the kissing of V.A.," and points out that "T.W. never reported her 'touching' incident until early in 2002."

■ As already discussed, however, such propensity evidence is probative on the issue of whether Mullens had a disposition for engaging in lewd acts with children and is admissible under section 1108 provided it is not inadmissible under section 352. We conclude the court did not abuse its discretion by finding that T.W.'s testimony was admissible as propensity evidence under section 1108 and not inadmissible under section 352. We reject Mullens's claim that the alleged incident involving Mullens's touching of T.W.'s thigh was so dissimilar from the alleged incidents regarding his touchings of S.S. as to render T.W.'s testimony about the thigh-touching inadmissible. Both alleged incidents involved allegedly improper touchings of young girls. Any dissimilarities in the alleged incidents went to the weight, not the admissibility, of the evidence. Any delay in T.W.'s reporting of the incident also went to the weight, not the admissibility, of her testimony. T.W.'s testimony as to the touching of her thigh was not unduly prejudicial as the jury had heard explicit testimony regarding Mullens's alleged multiple lewd acts involving S.S.

Mullens also contends the admission of the propensity evidence involving V.A. and T.W. gave the jury "the opportunity to 'convict' [him] of these incidents on the lesser preponderance of the evidence standard, causing the jury undue confusion," and it also turned the retrial into "three mini-trials,

unduly consuming time to present the propensity evidence, which under these circumstances, was not relevant to the charged offense."

These contentions are unavailing. Mullens has failed to meet his burden of showing the admission of the section 1108 propensity evidence consumed so much time and resulted in such confusion that the jury ignored the court's unambiguous jury instructions and the equally unambiguous closing arguments by both counsel that informed the jury that to convict Mullens of any of the charged offenses it had to find he was guilty beyond a reasonable doubt. The record shows that even the court's instruction regarding the propensity evidence, CALJIC No. 2.50.1 (2002 rev.) (6th ed. 1997), cautioned and reminded the jury that before it could find Mullens guilty of any of the charged crimes, "the evidence as a whole must persuade you beyond a reasonable doubt that [Mullens] is guilty of that crime."[5]

## II

### CLAIM THAT THE PROPENSITY EVIDENCE SHOWS NO OFFENSE AGAINST T.W.

Mullens also contends the court erred in admitting the propensity evidence involving T.W. because the thigh-touching incident did not constitute an offense under Penal Code section 288(a). We reject this contention.

As discussed previously, in a criminal action in which the defendant is accused of a sexual offense, section 1108(a) conditionally permits the introduction of "evidence of the defendant's commission of another *sexual offense or offenses* . . . ." Subdivision (d)(1)(A) of section 1108 (see fn. 3, *ante*) defines the term "sexual offense" to mean a crime that involved "[a]ny conduct proscribed by" various enumerated Penal Code sections, including Penal Code section 288. Here, the court admitted T.W.'s testimony about Mullens's touching of her thigh on the ground such alleged conduct constituted a sex crime under subdivision (a) or (c) of Penal Code section 288.

Penal Code section 288(a) makes it a crime to "willfully and lewdly commit[] any lewd or lascivious act . . . upon or with the body, or any part or

---

[5] The 2002 revised version of CALJIC No. 2.50.1, as modified in this case, provided: "Within the meaning of the preceding instructions, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed sexual offenses other than those for which he is on trial. [¶] You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that the defendant committed the other crimes or sexual offenses. [¶] *If you find other crimes were committed by a preponderance of the evidence, you are nevertheless cautioned and reminded that before a defendant can be found guilty of any crime charged or any included crime in this trial, the evidence as a whole must persuade you beyond a reasonable doubt that the defendant is guilty of that crime.*" (Italics added.)

member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." Penal Code section 288, subdivision (c)(1) makes it a crime to commit an act proscribed by subdivision (a) of that section when the victim is 14 or 15 years of age and the perpetrator is at least 10 years older.[6] "[Penal Code S]ection 288 is violated by 'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." (*People v. Martinez* (1995) 11 Cal.4th 434, 452 [45 Cal.Rptr.2d 905, 903 P.2d 1037].) "Because intent can seldom be proved by direct evidence, it may be inferred from the circumstances. [Citations.]" (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 299 [69 Cal.Rptr.2d 148].)

 Here, Mullens implicitly contends there was no evidence of the requisite sexual intent. T.W., however, testified that the touching occurred when she was 14 years of age. T.W. also testified that Mullens's touching her thigh, his "close hugging," his flirting with her, and the secrecy involved were inappropriate. We conclude that a reasonable jury, if it credited T.W.'s testimony about these matters, could infer that Mullens acted with the requisite intent, and thus the court did not err by finding that the alleged conduct at issue here constituted a sex crime under Penal Code section 288(a) or (c).

III

### EXCLUSION OF EVIDENCE SHOWING THE FIRST JURY ACQUITTED MULLENS OF COMMITTING A LEWD ACT AGAINST V.A.

Last, Mullens contends the court erred in admitting V.A.'s testimony about the alleged french-kissing incident without informing the jury that he had been acquitted of committing a lewd act against V.A. based on that incident. He maintains that, if this court concludes the trial court did not err in allowing V.A. to testify, reversal is required under *People v. Griffin* (1967) 66 Cal.2d 459 [58 Cal.Rptr. 107, 426 P.2d 507] (*Griffin*) and its progeny (discussed, *post*) because evidence of his acquittal was admissible. We conclude the court prejudicially erred by excluding evidence that the jury in

---

[6] Penal Code section 288, subdivision (c)(1) provides: "Any person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year. In determining whether the person is at least 10 years older than the child, the difference in age shall be measured from the birth date of the person to the birth date of the child."

the first trial found Mullens not guilty of committing the previously charged sex crime based on that incident.

### A. *Griffin and Its Progeny*

In *Griffin*, the defendant was charged with murdering a woman after he attempted to rape her, and a mistrial was declared when the jury failed to reach a verdict. (*Griffin, supra,* 66 Cal.2d at p. 461.) During the retrial, the trial court admitted evidence that the defendant had committed a subsequent rape attempt involving another woman, and the jury found him guilty of murder. (*Id.* at pp. 461, 463.) The defendant appealed, contending that the trial court erred in admitting evidence of the subsequent rape attempt, on the ground he had been acquitted of that alleged subsequent offense. (*Id.* at p. 464.)

Noting that under settled law competent and otherwise admissible evidence of another crime was not made inadmissible by reason of the defendant's acquittal of that crime, the *Griffin* court held that the trial court erred in excluding evidence on the issue of guilt that the defendant had been acquitted of the alleged subsequent sex crime. (*Griffin, supra,* 66 Cal.2d at p. 465.) The Supreme Court explained that although there was authority to the contrary, "*the better rule allows proof of an acquittal to weaken and rebut the prosecution's evidence of the other crime.* [Citations.]" (*Ibid.*, italics added.) The high court reasoned that "[r]egardless of its probative value, *evidence of other crimes always involves the risk of serious prejudice*, and it is therefore always 'to be received with "extreme caution." ' [Citation.] Indeed, for this very reason some courts have concluded that an acquittal so attenuates the weight that may properly be given evidence of another crime as to require the exclusion of such evidence altogether. [Citations.] *Our rule* does not go that far, but instead *is fair to both the prosecution and the defense by assisting the jury in its assessment of the significance of the evidence of another crime with the knowledge that at another time and place a duly constituted tribunal charged with the very issue of determining defendant's guilt or innocence of the other crime concluded that he was not guilty.*" (*Id.* at p. 466, italics added, fn. omitted.) The *Griffin* court also stated that it was convinced that it "should not depart from the rule that a properly authenticated acquittal is admissible to rebut prosecution evidence of guilt of another crime." (*Ibid.*)

In *People v. Beamon* (1973) 8 Cal.3d 625 [105 Cal.Rptr. 681, 504 P.2d 905], the California Supreme Court reaffirmed its decision in *Griffin, supra,* 66 Cal.2d 459. In *Beamon*, which involved a prosecution that arose out of the hijacking of a liquor delivery truck, a jury convicted the defendant of robbery and kidnapping for the purpose of robbery. (*Beamon, supra,* 8 Cal.3d at pp. 629–630.) The trial court had permitted the prosecution to present evidence that the victim had suffered a similar hijacking by the same

defendant 18 months before the current crimes were committed, but had also admitted evidence that the defendant had been tried and acquitted of criminal charges filed in connection with that previous hijacking. (*Id.* at p. 630.) On appeal, the defendant claimed that the trial court prejudicially erred by admitting evidence of the previous highjacking. (*Id.* at p. 632.) Citing *Griffin, supra,* 66 Cal.2d at page 464, the *Beamon* court upheld the admission of the evidence of the prior hijacking under section 1101, subdivision (b),[7] stating: "[T]he evidence relating to the prior hijacking of the victim's liquor truck was not rendered inadmissible by reason of the fact that defendant had been acquitted of the crimes charged in connection therewith. [Citation.] *As required by Griffin the trial court received evidence of the defendant's acquittal of the prior charges* and instructed the jury both at the time of receipt of the evidence and at the conclusion of trial as to the limited use of the testimony." (*Beamon, supra,* 8 Cal.3d at p. 633, italics added.)

In *People v. Ogunmola* (1985) 39 Cal.3d 120 [215 Cal.Rptr. 855, 701 P.2d 1173] (*Ogunmola*), overruled on another ground in *People v. Ewoldt* (1994) 7 Cal.4th 380, 386–387, 401–402 [27 Cal.Rptr.2d 646, 867 P.2d 757], the Supreme Court applied *Griffin* in a case involving the admission under section 1101 of evidence of a defendant's alleged prior bad acts as to which the defendant was acquitted. (*Ogunmola, supra,* at p. 122, fn. 1.) In *Ogunmola* the defendant, a board-certified gynecologist and obstetrician, was convicted of raping two patients while they were unconscious of the nature of the act. (*Id.* at p. 122.) The trial court permitted the prosecution to introduce evidence of previous similar incidents involving two other patients. (*Ibid.*) The defendant had been tried and acquitted of the crimes charged in connection with those previous incidents. (*Ibid.*) In ruling on the defendant's contention that the trial court prejudicially erred by admitting evidence of the prior incidents, the Supreme Court noted that "[*t*]*he jury was, of course, told of the acquittals,*" citing *Griffin, supra,* 66 Cal.2d at pages 464–466. (*Ogunmola, supra,* 39 Cal.3d at p. 122, fn. 1, italics added.)

In sum, *Griffin, supra,* 66 Cal.2d 459, and its progeny, as they pertain to this case, stand for the proposition (hereafter the *Griffin* rule) that if a trial

---

[7] Quoting subdivision (b) of section 1101 (hereafter section 1101(b)), the *Beamon* court stated that "[a]lthough evidence of character is inadmissible when offered to prove specific conduct on a particular occasion, there is no prohibition against 'the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive . . . , plan, knowledge, identity . . .) other than his disposition to commit such acts.' " (*Beamon, supra,* 8 Cal.3d at p. 632.) That subdivision currently provides: "*Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact* (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) *other than his or her disposition to commit such an act.*" (Italics added.)

court permits the prosecution to present evidence that the defendant committed one or more similar offenses for which he or she is not charged in the current prosecution, the trial court must also allow the defense to present evidence of the defendant's acquittal, if any, of such crimes, and failure to allow such acquittal evidence constitutes error. (*Griffin, supra,* 66 Cal.2d at pp. 464–466; *Beamon, supra,* 8 Cal.3d at p. 633; *Ogunmola, supra,* 39 Cal.3d at p. 122, fn. 1.)

B. *Analysis*

The parties have cited no California decisional authority, and we are aware of none, that has addressed the question presented here: whether in a sex offense prosecution in which the trial court has admitted section 1108 propensity evidence that the defendant has committed an uncharged sex offense, the *Griffin* rule requires admission of evidence, if any exists, that the defendant has been acquitted of that offense. Although *Griffin* is distinguishable from the present case in that *Griffin* did not involve the admission of section 1108 propensity evidence, we are persuaded that the rationale of *Griffin* is equally applicable here.

As already discussed, the *Griffin* court, in holding it was error to exclude evidence in the murder prosecution involved in that case that the defendant had been acquitted of an uncharged attempted rape offense, reasoned that "[r]egardless of its probative value, *evidence of other crimes always involves the risk of serious prejudice*, and it is therefore always 'to be received with "extreme caution." ' [Citation.]" (*Griffin, supra,* 66 Cal.2d at p. 466, italics added.)

■ Such reasoning also applies in a sex offense prosecution such as the one involved in this appeal. In a prosecution involving charges that the defendant committed lewd and lascivious acts against a child, admission of section 1108 propensity evidence that the defendant committed a sex offense against another child involves the risk of serious if not severe prejudice when the defendant is precluded from introducing evidence the defendant was acquitted of that offense.

Equally applicable in a sex offense prosecution involving admission of section 1108 propensity evidence is the *Griffin* court's reasoning that "the better rule allows proof of an acquittal to weaken and rebut the prosecution's evidence of the other crime" (*Griffin, supra,* 66 Cal.2d at p. 465), and such a rule "is fair to both the prosecution and the defense by assisting the jury in its assessment of the significance of the evidence of another crime with the knowledge that at another time and place a duly constituted tribunal charged with the very issue of determining defendant's guilt or innocence of the other crime concluded that he was not guilty." (*Id.* at p. 466.)

Here, the admission of evidence that Mullens committed an uncharged sex offense by french-kissing V.A., like the admission of evidence in *Griffin* that the defendant committed the uncharged attempted rape offense, involved the risk of serious prejudice. We are mindful that the Legislature enacted section 1108 in 1995 to expand the admissibility of propensity or disposition evidence in sex offense cases (*Falsetta, supra,* 21 Cal.4th at p. 911), and in our view the risk of serious prejudice is greater in a case such as this one in which propensity evidence is admitted under section 1108, than in a case in which evidence of prior bad acts is admitted under section 1101(b) (see fn. 7, *ante*). Unlike evidence admitted under section 1101(b), which permits "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact . . . *other than his or her disposition to commit such an act,*" section 1108 explicitly "allows bad conduct evidence to be admitted to prove 'predisposition' to commit sex crimes." (*People v. Harris* (1988) 60 Cal.App.4th 727, 730 [70 Cal.Rptr.2d 689].)

■ Because section 1108 involves evidence from which the trier of fact is permitted to infer both that the defendant has a predisposition to commit sex crimes and that as a result of this predisposition the defendant was likely to commit and did commit the charged sex offense (*Reliford, supra,* 29 Cal.4th at pp. 1012–1013), such evidence must be received with the utmost caution. " 'A concomitant of the presumption of innocence is that a defendant must be tried for what he did, not for who he is.' [Citations.]" (*People v. Harris, supra,* 60 Cal.App.4th at p. 737.) To give full meaning to the presumption of innocence in a case in which the prosecution is permitted to present section 1108 propensity evidence showing the defendant committed an uncharged sex crime, a trial court must grant the defense an opportunity to present evidence showing the defendant was acquitted of that alleged uncharged sex offense. In such cases, justice is best served by applying the *Griffin* rule so as to give the trier of fact the opportunity to consider and weigh both types of evidence in reaching a verdict that is based not on who the defendant is, but on what the defendant did.

We reject the People's contention that *Griffin, supra,* 66 Cal.2d 459, is inapplicable because it "concerned itself" with section 1101, and "never addressed evidence admitted under . . . section 1108." *Griffin* was decided in April 1967, only a few months after section 1101 became operative on January 1 of that year. (See 29B West's Ann. Evid. Code (1995 ed.) foll. § 1101, p. 438, citing Stats. 1965, ch. 299, § 2, p. 1297.) Although both parties here assert that *Griffin* involved the admission of evidence under section 1101, we note that the Supreme Court did not discuss section 1101 in that case. As already discussed, the *Griffin* court relied on the common law rule that "competent and otherwise admissible evidence of another crime is not made inadmissible by reason of the defendant's acquittal of that crime. [Citations.]" (*Griffin, supra,* 66 Cal.2d at p. 464.) Although *Griffin* did not

involve section 1108, which was later enacted in 1995 (*Falsetta, supra,* 21 Cal.4th at p. 911), for reasons already discussed the high court's reasoning in *Griffin* applies equally to a case such as this one in which propensity evidence is admitted under that section. Furthermore, we presume the Legislature was aware of the *Griffin* rule at the time it enacted section 1108 and could have included a provision therein to the effect that the *Griffin* rule did not apply to cases in which propensity evidence is admitted under section 1108. That the Legislature did not include such a provision signifies a legislative intent that the *Griffin* rule apply in such cases.

The People also contend that the *Griffin* rule should not apply when propensity evidence is admitted under section 1108 because evidence of an acquittal involves the "beyond a reasonable doubt" standard of proof, and CALJIC No. 2.50.01 permits the jury to consider evidence of uncharged sexual offenses under that section if proven by only a preponderance of the evidence. Thus, the People assert, there is danger the jury will be confused "as to what standard [of proof] to utilize in dealing with such evidence."

We reject these contentions. In *Reliford, supra,* 29 Cal.4th 1007, the California Supreme Court recently rejected an analogous contention made by a *defendant.* In *Reliford,* which involved a modified version of the 1999 revision of CALJIC No. 2.50.01,[8] the defendant claimed that the instruction was likely to mislead the jury concerning the prosecution's burden of proof because, having found an uncharged sex offense true by a preponderance of the evidence, the jurors would rely on that alone to convict him of the charged offenses. (*Reliford, supra,* 29 Cal.4th at pp. 1012–1013.) After thoroughly examining the provisions of the instruction, the Supreme Court upheld the giving of the modified version of the 1999 revision of CALJIC No. 2.50.01, stating: "We do not find it reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof. Nothing in the instructions authorized the

---

[8] As given by the trial court in *Reliford,* the 1999 revised version of CALJIC No. 2.50.01 provided: " 'Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense other than that charged in the case. [¶] "Sexual offense" means a crime under the laws of a state or of the United States that involves any of the following: [¶] Contact, without consent, between the genitals or anus of the defendant and any part of another person's body. [¶] If you find that the defendant committed a prior sexual offense in 1991 involving S[.]B[.], you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused. [¶] *However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense in 1991 involving S[.]B[.], that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime.* The weight and significance of the evidence, if any, are for you to decide. [¶] You must not consider this evidence for any other purpose.' " (*Reliford, supra,* 29 Cal.4th at pp. 1011–1012, italics added.)

jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination whether defendant committed a prior sexual offense." (*Reliford, supra,* 29 Cal.4th at p. 1016.)

Rejecting the notion that the instruction was too "complicated" for jurors to apply, the *Reliford* court also explained that "[t]his is not the first time jurors have been asked to apply a different standard of proof to a predicate fact or finding in a criminal trial. (E.g., CALJIC Nos. 2.50 [evidence of other crimes under . . . § 1101], 4.43 [necessity defense], 4.60 [entrapment], 4.74 [statute of limitations], 6.24 [admissibility of coconspirator's statements], 7.73 [failure to file tax returns in prior years], 12.06 [lawful possession of controlled substance].) As we do in each of those circumstances, we will presume here that jurors can grasp their duty as stated in the instructions to apply the preponderance-of-the-evidence standard to the preliminary fact identified in the instruction and to apply the reasonable-doubt standard for all other determinations." (*Reliford, supra,* 29 Cal.4th at p. 1016.)

The Supreme Court in *Reliford* also noted with approval that the 2002 revision of CALJIC No. 2.50.01, a modified version of which was given in the instant case, "inserts an additional cautionary statement: *'If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.'* Without passing on issues not before us and mindful of the risk that our comments will again be misconstrued we think the new sentence is an improvement. It provides additional guidance on the permissible use of the other-acts evidence and reminds the jury of the standard of proof for a conviction of the charged offenses." (*Reliford, supra,* 29 Cal.4th at p. 1016, italics added.)

 In *Hess v. State* (Alaska 2001) 20 P.3d 1121 (*Hess*), the Alaska Supreme Court stated that "[e]vidence of a prior acquittal may cause confusion if the jury takes it as proof that the defendant is *'innocent'* of the prior charge, rather than as evidence that reasonable doubt existed as to at least one element of the acquitted charge. But a high risk of unfair prejudice may outweigh the risk of confusion, and a jury instruction explaining the requisite levels of proof may minimize the risk of confusion." (*Id.* at p. 1129, fns. omitted, italics added.) Evidence that a defendant was acquitted of a prior sex offense does not mean that the crime did not happen or that the defendant did not commit that offense; it means "only that the state did not prove every element of the crime beyond a reasonable doubt" (*id.* at p. 1125, fn. omitted). The concept of an acquittal is easily understood, and appropriate jury instructions explaining the significance of an acquittal will cure any risk of confusion that might result from admission of evidence that the defendant

was acquitted of an uncharged sex offense the jury is permitted to consider under section 1108. Furthermore, as the *Hess* court recognized, evidence of an acquittal may help the jury weigh the evidence of the prior act. (*Hess, supra,* 20 P.3d at p. 1125, citing *Griffin, supra,* 66 Cal.2d 459.) "Because of the requirement of proof of guilt beyond a reasonable doubt, evidence of an acquittal is not, of course, as convincing of innocence as a judgment of conviction is convincing of guilt; but this fact goes to the weight not the admissibility of the evidence." (*Griffin, supra,* 66 Cal.2d at p. 466, fn. 3.) For the foregoing reasons, we hold that the *Griffin* rule applies to cases in which propensity evidence is admitted under section 1108 and, if the defendant in such a case has been acquitted of a prior sex offense to which the section 1108 propensity evidence pertains, the trial court in such a case is required to admit evidence of the defendant's acquittal.

 Applying this holding to the present case, we conclude that the excluded evidence of Mullens's acquittal of the previously charged sex offense against V.A. was admissible as a matter of law under *Griffin, supra,* 66 Cal.2d 459 and its progeny, and thus the court committed error by excluding that evidence. We also hold that the error was prejudicial under the *Watson* harmless error test. Given the history of this case and the mistrial that was declared after the first jury deadlocked by an eight-to-four vote in favor of a not guilty verdict with respect to the offenses he allegedly committed against S.S., we conclude it is reasonably probable the jury on retrial would have reached a result more favorable to Mullens had the court not erroneously excluded the evidence of his acquittal regarding the alleged offense against V.A. Had the jury been allowed to consider Mullens's acquittal with respect to the previously charged offense against V.A., "its consideration of the evidence of that [alleged] crime would have been materially affected." (*Griffin, supra,* 66 Cal.2d at p. 466.) We are persuaded that the error resulted in a miscarriage of justice, and thus the judgment must be reversed.[9]

---

[9] In a petition for rehearing, the People contend that (1) evidence of an acquittal is inadmissible hearsay, and (2) assuming for the sake of argument that a judgment of acquittal survives a hearsay challenge and is otherwise admissible, the court should retain discretion to exclude it under section 352. We reject these contentions.

The People did not object to the proffered acquittal evidence on hearsay grounds either in the trial proceedings or on appeal. The People raise the hearsay issue for the first time in the petition for rehearing. "It is well settled that arguments . . . cannot be raised for the first time in a petition for rehearing. [Citations.]" (*Gentis v. Safeguard Business Systems, Inc.* (1997) 60 Cal.App.4th 1294, 1308 [71 Cal.Rptr.2d 122].) Further, the People waived any hearsay claim by making no trial objection on that specific ground. (See *People v. Wheeler* (1992) 4 Cal.4th 284, 300 [14 Cal.Rptr.2d 418, 841 P.2d 938].)

Were we to reach the merits of the People's hearsay argument, we would reject it. In *Griffin, supra,* 66 Cal.2d at pages 465–466, the California Supreme Court rejected a similar hearsay objection, stating: "The Attorney General contends that *evidence of acquittal of another crime should not be admissible to prove that a defendant was not guilty of that crime, on the ground that the acquittal is only the hearsay opinion of another factfinder* based on evidence presented

## DISPOSITION

The judgment is reversed, and the matter is remanded for a new trial.

McIntyre, J., and Irion, J., concurred.

A petition for a rehearing was denied July 16, 2004, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied September 22, 2004. George, C. J., did not participate therein.

---

at another time and place. The same objection could be made to the use of many other official records as admissible hearsay, and, accordingly, it would be anomalous to treat judgments differently from other properly authenticated official documents when they are offered, not as res judicata, but for their evidentiary value alone. [Citations.] Whatever merit there may be to denying judgments evidentiary value in other contexts, we are convinced that we should not depart from the rule that a properly authenticated acquittal is admissible to rebut prosecution evidence of guilt of another crime." (Italics added, fns. omitted; see also the discussion in *Hess, supra*, 20 P.3d at pp. 1125–1127, rejecting a challenge to acquittal evidence on hearsay grounds.) Presumably aware of the *Griffin* rule, the Legislature has not abrogated or modified it.

We also reject the People's section 352 contention. For the reasons already discussed, if the court in conducting its section 352 analysis decides that the section 1108 propensity evidence should be admitted, the court must also admit the evidence of acquittal to rebut the propensity evidence. The admission of acquittal evidence under the *Griffin* rule to rebut the propensity evidence assures fundamental fairness and protects the defendant's due process right to a fair trial and the right to present a defense.