Filed 3/27/13  P. v. Ikelap CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JOEY IKELAP,<br><br>      Defendant and Appellant. | D061765<br><br><br><br>(Super. Ct. No. SCD236683) |


APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed.


Joey Ikelap was convicted by a jury of possession of cocaine base for sale, in violation of Health and Safety Code[1] section 11351.5.  Ikelap admitted various sentence enhancing allegations, including that he had previously been convicted of a Health and Safety Code violation within the meaning of section 11370.2, subdivision (a), had prior

___

1      All further statutory references are to the Health and Safety Code unless otherwise specified.

convictions (Pen. Code, § 1203, subd. (e)(4)) and served a prior prison term (Pen. Code, §§ 667.5 & 668). The court sentenced Ikelap to eight years in county jail, and imposed a restitution fine under Penal Code section 1202.4 and an administration of justice fee under Government Code section 29550.1.

I

FACTS

A. The Current Offense

On September 20, 2011, San Diego Police Officers Denny and Eraca were in a marked patrol car patrolling in an area of downtown San Diego known for drug activity. Around 10:30 p.m., they observed Ikelap and another man huddled together at the front of a white truck parked in the 1400 block of Island Avenue. The officers, believing the men were involved in drug activity, pulled up behind the truck. Ikelap and the other man began walking away. The officers got out and contacted Ikelap and the other man. No contraband was found on either of them and, after the officers told them they were free to go, both men walked away.

The officers then inspected the front of the truck and Denny discovered a small plastic bag, containing several rocks that appeared to be cocaine base, in plain view on a flat portion of the right front wheel frame of the truck. Denny did not touch the bag. Instead, believing its owner would return for such a large amount of cocaine base, Denny decided to maintain surveillance of the area from a vantage point that afforded a clear view of the truck. He watched the truck from a nearby location while Eraca waited in the patrol car some distance away.

2

About eight minutes later, after two to five people had walked by the truck without stopping or looking at it, Denny saw Ikelap reappear, walk past the truck, stop to urinate on a wall 20 to 25 yards from the truck, and then walk back to it. Ikelap went directly to the front of the truck and picked up the bag without looking around. Denny alerted Eraca, who pulled up to Ikelap in the patrol car. Ikelap reacted by tossing the bag away. Eraca detained him and, while another officer watched Ikelap, returned to where the bag had been tossed. He found the bag about 10 to 15 feet from where Ikelap was detained, and Denny confirmed it was the same bag he had seen in the truck's wheel area. It contained eight rocks of cocaine with a net weight of 1.32 grams.

Eraca searched Ikelap and found a cell phone and over $300 cash in various denominations, including numerous $20, $5 and $1 bills. Ikelap's cell phone rang six to 10 times following his arrest. Police found no glass pipes or other paraphernalia for consuming the cocaine base, and Ikelap showed no symptoms of being under the influence of any controlled substance. An expert testified the quantity of cocaine base, the portions into which they were broken (all "set up to be $20 amounts"), the presence of the cell phone, and the presence of cash primarily in denominations of $20, $5 and $1, were all indicia of sales. The expert also noted (1) the absence of a glass pipe would indicate Ikelap did not intend to consume the rocks, (2) the amount found on Ikelap would require nearly eight days of "smoking nonstop and never sleeping and being high that entire time" to consume, and (3) users don't generally carry substantial amounts of cash on their person.

B. The Prior Crimes Evidence

On October 31, 2007, San Diego Police Officer Pira contacted Ikelap in the 1500 block of Island Avenue in San Diego. Pira searched Ikelap and found rocks containing cocaine base with a total net weight of 1.76 grams and more than $600 in cash in various denominations. During the booking process, Ikelap stated he was not employed.

On April 1, 2008, detectives Day and Botkin were conducting a "buy-bust" operation. Day contacted a man (Tataipu) on the 1400 block of Island Avenue in San Diego and asked about buying $40 worth of rock cocaine. Tataipu said he did not have any drugs but would call his brother. After Tataipu made a phone call, he and Day took the trolley one stop north, where they exited. Day gave Tataipu two prerecorded $20 bills and eventually saw Tataipu give the money to Ikelap, after which Tataipu walked directly back to Day and gave him a rock with cocaine base. Day gave the "bust" signal and Botkin arrested Ikelap. Botkin searched Ikelap and found nearly $500 on him, including the prerecorded bills.

II

ANALYSIS

A. The *Mullens*[2] Claim

In connection with the 2008 offense, Ikelap pleaded guilty to sale of a controlled substance (§ 11352). However, in connection with the 2007 offense, a jury acquitted Ikelap of a possession for sale charge (§ 11351.5) and instead convicted him only of

---

[2]     *People v. Mullens* (2004) 119 Cal.App.4th 648 (*Mullens*).

simple possession (§ 11350). Ikelap asserts it was prejudicial error in his current trial to preclude defense counsel from eliciting that Ikelap was acquitted of the possession for sales charge (§ 11351.5) in connection with the 2007 incident.

*Background*

Prior to trial, the prosecution moved in limine to admit evidence of both the 2007 and 2008 crimes under Evidence Code section 1101, subdivision (b), to prove Ikelap's knowledge (e.g. that he knowingly possessed a controlled substance) and intent (e.g. that he possessed it for purposes of sale). At a pretrial hearing, the defense stated it would stipulate Ikelap knew the nature of the substance and argued that, because the two incidents were too dissimilar to the present case to have any relevance to the intent issue, it would be improper to admit either prior crime into evidence. The court indicated that, because the defense was stipulating to the knowledge element, it would not permit evidence of the 2007 incident because it was a simple possession case and therefore only relevant to the knowledge element. However, the court indicated it would allow the evidence of the 2008 incident because it had relevance to the intent to sell element. The defense then stated it would agree to allow both incidents to be admitted because "[i]f one is going to come in, we might as well have the other one come in also." The court agreed to allow both incidents, but acknowledged that the defense was still seeking a limiting instruction as to those crimes.

After the prosecution introduced Pira's testimony about the 2007 crime (e.g. that Ikelap was found in possession of rocks containing cocaine base and more than $600 in cash in various denominations but was not employed), the defense asked for a chambers

5

conference before cross-examining Pira to determine whether the court would allow the defense to show (through Pira) that Ikelap was convicted only of simple possession. The court indicated that, if the prosecution planned to use the 2007 incident to show *intent* (by arguing Ikelap possessed the drugs in the current case with the same intent to sell as he did in the 2007 case), the court would permit the defense to show the 2007 conviction was only for simple possession, but if the prosecution limited use of the 2007 arrest to show *knowledge* (Ikelap knew the substance possessed in the current case was a controlled substance because of his prior possession of the same substance in 2007), the precise nature of the 2007 conviction would be irrelevant. The prosecutor stated it would limit its argument to the knowledge issue. The defense objected that the evidence of the 2007 incident was necessarily admitted as to the intent issue, since the issue of knowledge was not contested, and therefore insisted the defense should be allowed to show the nature of the 2007 conviction. The court rejected that argument, and stated it would give a limiting instruction that the only relevance of the 2007 incident would be on the issue of knowledge, while the relevance of the 2008 incident would be on the issues of both knowledge and intent.

After the defense finished cross-examining Pira, the court immediately instructed the jury that the only purpose for which it could consider Pira's testimony was on the issue of knowledge and for "no other purpose." The court gave a similar instruction on completion of the evidence as to the 2008 incident, stating that "as to the 2008 incident, you are only to consider that as it relates to his alleged intent and knowledge on the date [of the charged offense]. [¶] With respect to the 2007 incident, you can only consider

6

that with respect to knowledge."  Finally, in its closing charge to the jury, the court

reiterated the limited purpose for which the 2007 and 2008 incidents could be considered,

instructing:

> The People presented evidence that [Ikelap] committed the offense
> of possession of cocaine base [in 2007] and sale of cocaine base [in
> 2008] that were not charged in this case.  You may consider this
> evidence only if the People have proved by a preponderance of the
> evidence that [Ikelap], in fact, committed the uncharged offenses.
> [¶] . . . [¶]  If you decide that [Ikelap] committed the uncharged
> offenses, you may but are not required to consider that evidence for
> the limited purpose of deciding whether or not [Ikelap] acted with
> the intent to sell the controlled substance in this case or [Ikelap]
> knew of the presence of the controlled substance and the substance's
> nature or character as a controlled substance . . . ."

*Legal Principles*

The ordinary rules governing the admission of other crimes evidence are well

established.  Evidence of other crimes or bad acts is inadmissible when it is offered to

show a defendant had the criminal disposition or propensity to commit the crime charged.

(Evid. Code, § 1101, subd. (a).)  However, evidence of other crimes or misconduct by a

defendant is admissible to prove a fact other than a disposition to commit such acts (Evid.

Code, § 1101, subd. (b)), including knowledge and intent.  (*People v. Ewoldt* (1994) 7

Cal.4th 380, 402.)  If the trial court determines that uncharged misconduct is admissible

under Evidence Code section 1101, subdivision (b), it must then determine whether the

probative value of the evidence is "substantially outweighed by the probability that its

admission [would] . . . create substantial danger of undue prejudice, of confusing the

issues, or of misleading the jury."  (Evid. Code, § 352; *Ewoldt,* at p. 404.)  We review the

7

trial court's rulings under these standards for an abuse of discretion. (*People v. Lewis* (2001) 25 Cal.4th 610, 637.)

However, when the other crimes evidence involves conduct for which the defendant had been charged but acquitted in a prior criminal proceeding, the so-called "*Griffin* rule," derived from *People v. Griffin* (1967) 66 Cal.2d 459, places additional constraints on the admission of other crimes evidence. In *Mullens, supra,* 119 Cal.App.4th 648, we summarized the *Griffin* rule as follows:

> "In sum, [*Griffin*], and its progeny, as they pertain to this case, stand for the proposition . . . that if a trial court permits the prosecution to present evidence that the defendant committed one or more similar offenses for which he or she is not charged in the current prosecution, the trial court must also allow the defense to present evidence of the defendant's acquittal, if any, of such crimes, and failure to allow such acquittal evidence constitutes error." (*Mullens, supra*, 119 Cal.App.4th at pp. 664-665.)

Additionally, we recognized in *Mullens* that the trial court in such a case is *required* to admit evidence of the defendant's acquittal, because evidence of the acquittal of the previously charged offense "was admissible as a matter of law under [*Griffin*] and its progeny." (*Mullens, supra*, 119 Cal.App.4th at p. 669.) Indeed, *Mullens* specifically rejected the People's assertion that a trial court nevertheless retains discretion under Evidence Code section 352 to exclude *Griffin* evidence, explaining that "[f]or the reasons already discussed, if the court in conducting its section 352 analysis decides that the section 1108 propensity evidence should be admitted, the court *must also admit the evidence of acquittal* to rebut the propensity evidence. The admission of acquittal evidence under the *Griffin* rule to rebut the propensity evidence assures fundamental

8

fairness and protects the defendant's due process right to a fair trial and the right to present a defense." (*Mullens,* at p. 670, fn. 9, italics added.)

*Analysis*

We conclude the trial court did not err in its rulings. The jury's consideration of the 2007 crime was expressly limited to one issue: did Ikelap know the substance found in his possession in 2011 was a controlled substance. The fact he was acquitted in 2007 of a possession for sales charge (§ 11351.5) and only convicted of simple possession (§ 11350) was irrelevant to the issue for which it was admitted, because acquittal of the former had no relevance to proving, in the instant case, whether Ikelap knew the substance found on his person was a controlled substance.

Ikelap's primary argument is that the prejudicial impact of having the 2007 incident presented to the jury was not adequately ameliorated by the limiting instructions given to the jury, and the jury likely misused the facts of the 2007 offense to infer Ikelap possessed the drugs in 2011 with the requisite intent to sell them. However, we presume the jury understood and correctly applied the court's instructions (*People v. Sanchez* (2001) 26 Cal.4th 834, 852), and therefore we presume the jury understood the exceedingly limited purpose for which it could consider the 2007 evidence. Moreover, because the court specifically instructed the jury the prosecution's evidence was that Ikelap "committed the offense of possession of cocaine base [in 2007]," the jury was indirectly instructed that the 2007 offense (despite its factual parallels to the facts of the present case) was *limited* to a simple possession offense, blunting any claim that the jury

9

likely misused the facts of the 2007 offense to infer Ikelap possessed the drugs in 2011 with the requisite intent to sell.

Finally, even assuming the court should have admitted the acquittal as suggested by Ikelap, we are convinced any error was harmless because it is not reasonably probable Ikelap would have obtained a more favorable result had that evidence been admitted.[3] The evidence on which the present conviction was based was substantial and unrelated to the 2007 incident. Ikelap was found in possession of an amount of drugs beyond what could be consumed without Herculean consumption, and without any of the implements necessary for consumption even had he tried to undertake that effort, and there were no signs that he had in fact consumed the drugs. Moreover, he was found with rocks broken into sizes of a typically marketable size, and with a large amount of cash in denominations consistent with selling and inconsistent with the amount of cash ordinarily carried by users. Finally, he was found in an area frequented by sellers and carried an implement (a cell phone) employed by sellers that rang frequently following his arrest. Additionally, the "other crimes" evidence concerning the 2008 incident, which Ikelap does not claim was improperly admitted, involved analogous conduct for which he was convicted of possession for sale. The foregoing evidence was the focus of the prosecutor's closing argument as to Ikelap's intent to sell, and the evidence of the 2007

---

[3]    Although Ikelap argues the more stringent test of *Chapman v. California* (1967) 386 U.S. 18 should apply, the courts have applied *People v. Watson* (1956) 46 Cal.2d 818 to the erroneous admission of other crimes evidence (see, e.g., *People v. Scheer* (1998) 68 Cal.App.4th 1009, 1018-1019) and to the exclusion of acquittal evidence in violation of the *Griffin* rule (see, e.g., *Mullens, supra*, 119 Cal.App.4th at pp. 658-659, 669), and we therefore apply the *Watson* test here.

incident was mentioned in the prosecution's closing argument *only* in connection with the knowledge element of the offense. On this record, we conclude it is not reasonably probable Ikelap would have obtained a more favorable result had the jury been informed of the prior adjudication.

B. The Booking Fee Claim

Ikelap contends the $154 "booking fee," imposed under Government Code section 29550.1 as a local arrestee, violated his equal protection right because under that provision a court is not required to consider his ability to pay, when in contrast a court must consider a defendant's ability to pay the same fee if imposed under Government Code section 29550.2 as a county arrestee. However, Ikelap did not challenge this booking fee in the trial court and equal protection claims not preserved at trial are ordinarily deemed forfeited.[4] (See, e.g., *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14.) As our Supreme Court has held, "all 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' raised for the first time on appeal are not subject to review." (*People v. Smith* (2001) 24 Cal.4th 849, 852, citing *People v. Scott* (1994) 9 Cal.4th 331, 353.) This forfeiture rule exists " 'to reduce the number of errors committed in the first instance' " (*ibid.*), and " 'the number of costly appeals brought on that basis [citation].' " (*Smith,* at p. 852, quoting *People v. Welch* (1993) 5 Cal.4th 228, 235.) Ikelap neither raised his challenge to the court's imposition

---

[4] The California Supreme Court is currently reviewing whether a challenge to a jail booking fee is subject to forfeiture if not raised below. (*People v. McCullough* (2011) 193 Cal.App.4th 864, review granted June 29, 2011, S192513.)

of booking fees at sentencing nor presented evidence of differential treatment in the record, and we conclude this discretionary sentencing choice is therefore not subject to review on appeal.

Even assuming Ikelap's claim was not forfeited and equal protection requires the court to make an implied finding of an ability to pay,[5] there was sufficient evidence of Ikelap's ability to pay to support an implied finding. A court's finding of a defendant's present ability to pay may be express or implied "through the content and conduct of the hearings." (*People v. Pacheco* (2010) 187 Cal.App.4th 1392, 1398; *People v. Phillips* (1994) 25 Cal.App.4th 62, 71.) The probation report considered by the trial court showed Ikelap's employment, while sporadic, earned him $80 per day as a laborer. He was not homeless, but instead rented a room in a house. Ikelap has no children for whom child support would be owed, and it appears he has no other debts. He will presumably have prison wages; he did not make a contrary claim. (*People v. Frye* (1994) 21 Cal.App.4th 1483, 1486-1487.) The imposition of the $154 booking fee was proper.

C. <u>The Restitution Fine and Abstract of Judgment</u>

Ikelap contends, and the People concede, the court's restitution fine was imposed under higher rates contained in the version of Penal Code section 1202.4, subdivision (b)(1), in effect at the time of sentencing, rather than the lower rates contained in the version of Penal Code section 1202.4, subdivision (b)(1), in effect at the time of the

---

5    The California Supreme Court has also granted review in a case that rejected an equal protection challenge to Government Code section 29550.1, but deferred further action pending resolution of the related issue in *McCullough*. (*People v Mason* (2012) 206 Cal.App.4th 1026, review granted August 29, 2012, S203747.)

offenses. Ikelap further argues, and the People concede, employing the version in effect at sentencing rather than the version in effect at the time of the offenses to calculate the fine would violate ex post facto protections. Ikelap asserts, the People concede, and we agree, that ex post facto concerns may be eliminated by ordering the abstract of judgment to be amended to impose a restitution fine of $1600 based on the law at the time of the offenses.

The People also note in their brief on appeal that the abstract of judgment erroneously states Ikelap received a three-year sentence enhancement under section 11372.5, subdivision (a), and instead should have stated he received a three-year enhancement under section 11370.2, subdivision (a). We agree and will direct the trial court to correct the abstract of judgment.

### DISPOSITION

The court on remand shall amend the sentence to impose a restitution fine of $1600, and shall amend the abstract of judgment to reflect imposition of a three-year enhancement under section 11370.2, subdivision (a), and, as so modified, the judgment is affirmed.

McDONALD, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.

13