Filed 10/11/13  P. v. Lopez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>ENRIQUE LOPEZ,<br><br>    Defendant and Appellant. | F065820<br><br>(Super. Ct. No. 192419)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Linda McFadden, Judge.

Maureen L. Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Leanne Le Mon and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Wiseman, Acting P.J., Levy, J. and Detjen, J.

A jury convicted appellant, Enrique Lopez, of first degree murder (Pen. Code, §§ 187, subd. (a); 189/count 1) and possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)/count 2), and found true an enhancement allegation that appellant, in committing the former offense, personally discharged a firearm (Pen. Code, § 12022.53, subd. (d)).  The court imposed a prison term of 50 years to life, consisting of 25 years to life on the count 1 offense and 25 years to life on the accompanying enhancement, plus a consecutive two-year term on the count 2 offense.

On appeal, appellant contends the court prejudicially erred in admitting a piece of physical evidence, viz., an ammunition case found by police during a search of a storage shed located near appellant's residence.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### Facts - Prosecution Case

On June 14, 1998 (June 14), Arturo Cortez (Arturo) and his cousin, Miguel Cortez (Miguel), went to Brennan Park (the park) in Oakdale where they sat talking and drinking beer.  They were subsequently joined by appellant and Manuel Duarte, who arrived together in a van, and later by Manuel Ornelas, who rode a bicycle to the park.

At some point, an argument broke out.  Miguel testified Duarte and Ornelas began arguing, and appellant "butted into the argument."  Arturo testified appellant started the argument with Ornelas.  Arturo further testified appellant claimed Ornelas owed him $150.00, asked Ornelas when Ornelas was going to pay him, and kicked Ornelas. Thereafter, appellant and Duarte left in the van and, according to Arturo's testimony, as they were leaving, appellant said he was going to come back and kill Ornelas.  Appellant and Duarte took Ornelas's bicycle with them in the van; Miguel testified appellant and Duarte said they were taking the bicycle "in payment of what [Ornelas] owed them."

Appellant and Duarte later returned in the van—approximately 20 minutes to one half hour later according to Miguel, and 90 minutes later according to Arturo.  Appellant got out of the van carrying what Arturo described as a nine-millimeter "short-barreled

2

uzi" and what Miguel described as "a kind of short barreled machine gun." Appellant approached Ornelas and fired multiple shots, striking Ornelas in the chest.

The physician who performed an autopsy the next day testified Ornelas died of multiple gunshot wounds to the head, torso and extremities.

On June 14, police officers, responding to a report of a homicide, went to Brennan Park where they found nine-millimeter shell casings, bullets, and copper jacketing from the rounds. The shell casings and bullets bore the brand name "Federal."

That same day, police spoke with Arturo, who told police what he saw and that appellant was the shooter. Also that day, police showed Arturo a photographic line-up. Arturo identified a photograph of appellant as that of the shooter, and a photograph of Duarte as that of the person who drove the van.

Police learned appellant was on probation, and from Arturo they learned where appellant lived. The day after the shooting, police conducted a probation search, during which, in appellant's house, officers found a "flack jacket," shotgun rounds, .22 caliber ammunition and .45 caliber ammunition. Police found no nine-millimeter ammunition.

Police also found, in a storage shed located, according to police testimony, "right off to the side of the house," an object described by a police officer testifying as an expert on firearms and ballistics as a "red plastic 50-round ammo container holder" ("ammunition case" or "case"). The witness opined the case was manufactured by "Federal," and that nine-millimeter rounds would fit in the case, as would ".38, .38 Special and possibly .380."

*Facts - Defense Case*

Appellant testified that on June 14, Manuel Duarte, who appellant had known for four or five years, arrived at appellant's house in Oakdale, driving his (Duarte's) van. Duarte asked appellant if he wanted to "drink some beers," and shortly thereafter, appellant and Duarte got in the van and Duarte drove to a convenience store in Oakdale,

3

where the two bought a 12-pack of beer.[1]  They then got back in the van and Duarte drove to a park, where they found Miguel sitting by himself.  The three "knew each other," so appellant and Duarte sat with Miguel and the three "began drinking beer."  They had been there approximately one and one-half hours when Manuel Ornelas, who appellant also knew, arrived riding a bicycle.

Ornelas took a beer without being offered one, and then he and Duarte began arguing "about some kind of deal that they had."  Duarte kicked Ornelas; Ornelas, who had been sitting, stood up; and appellant stepped in to separate the two because it appeared they were going to fight.  Approximately five minutes later, Duarte told appellant that the two of them were going to go buy more beer, at which point Duarte grabbed Ornelas's bicycle and put it in the van.  Appellant and Duarte then got in the van and Duarte drove to another convenience store.

After they had traveled a short distance, they saw, standing on the sidewalk, a friend of Duarte's with whom appellant was slightly acquainted and knew only by his first name, David.  Duarte parked, told David they were going to buy beer and invited him to get in the van.  David got in and Duarte drove to a store, where David and Duarte went in while appellant waited in the van.

They came out with a six-pack of beer and Duarte told appellant to drive, at which point appellant drove to the park and parked.  Inside the van, Duarte and David drank some beer, and Duarte said they were going to a store to get yet more beer.  Duarte and David got out of the van and walked down a nearby alley, while appellant remained in the van and ingested some cocaine.  Approximately five to 10 minutes later, appellant heard gunshots, and five to 10 seconds after that, Duarte—holding a pistol in his hand—and David returned to the van and got in.  Duarte yelled at appellant, "'Drive, bastard, because this is fucked up.'"

---

**1**    The "Defense Case" portion of our factual summary is taken from appellant's testimony.

4

Appellant drove a short distance and stopped when Duarte told him to do so. The three men got out of the van and, with David and Duarte telling appellant to follow, walked to a car parked close to a nearby K-Mart store. All three got in the car and Duarte told appellant to drive. Appellant, fearful because Duarte had a gun, and following Duarte's directions, drove to a house in Turlock.

There, the three got out and Duarte, after speaking to a man in the house, told appellant to get into a pickup truck that was parked nearby. Appellant, Duarte and the man from the house got in and, with Duarte giving directions, the man drove to Los Angeles, to the house of a person appellant understood to be Duarte's uncle. Thereafter, appellant and Duarte got into another car and drove to Mexico, eventually arriving in Michoacán, where they went their separate ways.

Appellant remained in Michoacán, where he had family, until approximately 2009, when he was detained by Mexican authorities and eventually extradited to the United States.

At no time on June 14 did appellant see Arturo at the park. Appellant's relationship with Arturo was "[n]ot good" because appellant had loaned Arturo $3,000.00, and Arturo failed to repay the loan.

### Procedural Background

Prior to trial, appellant filed a written three-paragraph "motion to exclude evidence of ammunition ...." (Unnecessary capitalization omitted.)[2] The first paragraph stated, in its entirety: "There is no evidence that the ammunition box located in [appellant's] house can be inferred to have held the bullets involved in this shooting. Other than the caliber of bullets used in the shooting matching the caliber of the bullets the ammunition box held, the People have offered no discovery suggesting the ammunition box can be tied to the ammunition used in the shooting. Moreover, the Defense anticipates any ballistics

---

[2]    We refer to this written motion as the motion to exclude evidence.

5

expert [called] by the prosecution would admit that 9 mm caliber ammunition is one of the most common calibers sold in the United States. He should also admit that .38 caliber ammunition is for all intents and purposes, identical in diameter to 9 mm. As such, the ammunition box located in [appellant's] residence would fit the two most common caliber of bullets found in the United States."

In the second paragraph, appellant summarized Evidence Code section 352[3] and argued, "The prior [conviction] the Defendant has been reportedly convicted of is very similar in nature [to the charged offenses], and would cause undue prejudice."

In the third paragraph, appellant presented further argument relating to evidence of a prior conviction, but made no mention of an ammunition case.

At trial, at a hearing conducted outside the presence of the jury prior to the taking of testimony, the court referred to the defense motion "to preclude [the prosecution] from introducing the ammunition holder," and noted that the court "had met with counsel in chambers briefly concerning this." After brief argument, the court ruled that "under [section] 352 ... that evidence will be admitted."

Subsequently, during trial, the prosecution moved for admission of the ammunition case into evidence. Appellant made no objection, and the case was received into evidence.

**DISCUSSION**

As indicated above, appellant contends the court committed prejudicial error in admitting into evidence the ammunition case. His argument, as best we can determine, consists of three parts.

---

**3** All further statutory references are to the Evidence Code. Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

6

*Relevance*

"No evidence is admissible except relevant evidence" (§ 350), and section 210 defines relevant evidence as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." Appellant contends the court erred in admitting the ammunition case into evidence because the prosecution failed to "meet [its] burden" of "establishing its relevance."[4] We disagree.

As indicated above, the inquiry with respect to relevance is simply whether the evidence had "*any* tendency in reason" to prove or disprove disputed facts. (§ 210, italics added.) "The most accepted test of relevancy is: Does the evidence offered render the desired inference more probable than it would be without the evidence?" (*Ruiz v. Minnesota Mining & Mfg. Co.* (1971) 15 Cal.App.3d 462, 467, fn. 3.) Here, where the key disputed issue was whether appellant shot the victim, evidence of virtually any item associated with the use and/or ownership of firearms—including an ammunition case that could hold the same caliber of ammunition as that found at the scene of the shooting— found in a storage shed on appellant's property, satisfies this test.

In any event, if admission of the ammunition case into evidence was error, it was harmless error. The erroneous admission of evidence warrants reversal of a judgment only if the reviewing court concludes it is reasonably probable that a more favorable result would have been reached in the absence of the error. (*People v. Mullens* (2004)

---

**4** We assume without deciding that this claim has been preserved for appeal. See section 353 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to *make clear the specific ground of the objection or motion"* (italics added)]; *People v. Partida* (2005) 37 Cal.4th 428, 433-434 (*Partida*) ["'(The California Supreme Court has) consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable'"].

7

119 Cal.App.4th 648, 658–659; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Here, the challenged evidence did not give rise to a strong inference of guilt. Moreover, it was only slightly more probative of guilt than the evidence of other firearms-related items, viz., ammunition of various types, found in appellant's house. As the prosecutor stated in closing argument, the ammunition case was "just a little piece of the puzzle" and "not critical." Because, the case did not add significantly to the prosecution case, it is not reasonably probable that the jury would have reached a result more favorable to appellant had it been excluded.

### *Section 352*

Appellant argues that under section 352,[5] "[The ammunition case] should have been excluded on the grounds that it lacked probative value and was more prejudicial than probative." Again, we disagree.

""""We review for abuse of discretion a trial court's rulings on ... admission or exclusion of evidence under Evidence Code [section] ... 352." [Citation.]' [Citations.]" (*People v. Fuiava* (2012) 53 Cal.4th 622, 667–668, fn. omitted.) "A court abuses its discretion when its ruling 'falls outside the bounds of reason.'" (*People v. Osband* (1996) 13 Cal.4th 622, 666; accord, *People v. Carrington* (2009) 47 Cal.4th 145, 195 [an abuse of discretion is "established by 'a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice'"].)

"'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging."'" (*People v. Karis* (1988) 46 Cal.3d 612, 638.) Evidence need not be excluded under this provision unless it "poses an intolerable 'risk to the

---

[5] See footnote 2.

fairness of the proceedings or the reliability of the outcome.'" (*People v. Waidlaw* (2000) 22 Cal.4th 690, 724.)

Here, admittedly, and as discussed earlier, the probative value of the ammunition case was low. However, the potential for prejudice was also low. There was nothing about the challenged evidence that would have evoked an emotional bias against appellant, nor did it pose any serious risk to the fairness of the trial or the reliability of the outcome. The court's refusal to exclude the ammunition case under section 352 was well within its discretion. Moreover, even if we were to conclude the court abused its discretion under section 352, we would find such error harmless, for the same reasons discussed above, that any error under section 211 in admitting the challenged evidence was harmless.

### Due Process

Finally, appellant argues that because the challenged evidence was "irrelevant and misleading" and "[t]he evidence against appellant was not strong," admission of the ammunition case rendered the trial "fundamentally unfair," in violation of appellant's due process rights under the Fourteenth Amendment to the Unites States Constitution.

The People first counter that appellant did not object below on due process grounds to the admission of the ammunition case, and therefore, under section 353, appellant's due process claim has not been preserved for appeal. In addressing this contention, we are guided by *Partida*, *supra*, 37 Cal.4th 428.

In that case, the defendant objected at trial to the admission of gang evidence on section 352 grounds but did not object that the evidence would violate his due process rights. The court in *Partida* held: "The [section 352] objection alerted the court to the nature of the anticipated evidence and the basis on which its exclusion was sought. It permitted the court to make an informed ruling and gave the People the opportunity to establish the evidence's admissibility. On appeal, defendant may argue that the court erred in its ruling. But [under section 353] he may not argue that the court should have

9

excluded the evidence for a reason different from his trial objection. If he had believed at trial, for example, that the trial court should engage in some sort of due process analysis that was different from the Evidence Code section 352 analysis, he could have, and should have, made this clear as part of his trial objection. He did not do so. Accordingly, he may not argue on appeal that due process required exclusion of the evidence for reasons other than those articulated in his Evidence Code section 352 argument." (*Partida*, *supra*, 37 Cal.4th at p. 435.) The court allowed the defendant to make "a very narrow due process argument on appeal," i.e., the defendant was allowed to "argue that the asserted error in admitting the evidence over his Evidence Code section 352 objection had the additional legal consequence of violating due process." (*Ibid*.)

We recognize that appellant, in his written motion to exclude evidence, did not explicitly base his challenge to the admission of the ammunition case on section 352 grounds. However, in ruling on the motion, the court made explicit reference to section 352, thus indicating the court understood appellant's argument to be that probative value of the ammunition case was substantially outweighed by the danger that the admission of that evidence would create a substantial danger of undue prejudice. Appellant makes this same argument on appeal. Under *Partida*, he is not precluded from doing so.

Appellant's argument, however, is without merit. "Having concluded that the trial court did not abuse its discretion under section 352, we must also reject [appellant's] argument that he was deprived of his constitutional right to a fair trial. '"The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair."' [Citations.]" (*People v. Holford* (2012) 203 Cal.App.4th 155, 180; accord, *People v. Falsetta* (1999) 21 Cal.4th 903, 913; *People v. Paniagua* (2012) 209 Cal.App.4th 499, 517.) As demonstrated earlier, the probative value of the challenged evidence was low.

**DISPOSITION**

The judgment is affirmed.

10