Filed 9/23/14  P. v. Miale CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F065965 |
| Plaintiff and Respondent, | (Tuolumne Super. Ct. No. CRF37808) |
| v. | |
| MARTIN ROSS MIALE, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Eleanor M. Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Alice Su, Deputy Attorneys General, Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Martin Ross Miale was charged with two felonies in connection with allegations that he stole several metal objects from the property of Peter Joice located in a "remote" area of Tuolumne County. Defendant testified that he believed the objects were abandoned scrap metal.

At an in limine hearing, the prosecutor conveyed defense counsel's offer of proof that Joice, the property owner, had told members of the community that "anyone could take the [metal] items – or that they could take the items." The prosecutor moved to exclude "any sort of reference" to those alleged statements because (1) they were irrelevant, and (2) the names of two individuals to whom Joice allegedly made the statements had only been made known to the prosecution on the morning of trial. The trial court granted the prosecutor's motion and ordered that defense counsel could not ask Joice whether he "made representations [regarding abandonment of the metal] to the community in general, or to any specific individuals .…"

We conclude that the trial court erred in preventing defense counsel from asking Joice whether he had told people the metal was abandoned. We further conclude the error was prejudicial, because it prevented cross-examination on an issue central to the primary defense theory (i.e., abandonment).[1] We therefore reverse the judgment.

## PROCEDURAL BACKGROUND

### Summary

On May 4, 2012, appellant Martin Ross Miale (defendant), and codefendant Ralph Carl Holm, were charged with grand theft (count I – Pen. Code § 487, subd. (a))[2] and receiving stolen property (count II – § 496, subd. (a)). It was also alleged that defendant

---

[1] We do not resolve defendant's claim of error relating to the prosecutor's comments during rebuttal argument.

[2] All further statutory references are to the Penal Code unless otherwise stated.

2.

had suffered a prior serious or violent felony conviction (§ 667, subds. (b)–(i)), and four prior prison commitments (§ 667.5, subd. (b)).

The prior conviction allegations were bifurcated from the grand theft and receipt of stolen property charges.  On July 13, 2012, a jury convicted defendant on both counts.  Defendant then admitted the prior convictions.

The court sentenced defendant to a total aggregate term of eight years in prison.  On the grand theft conviction, defendant received a middle-term sentence of two years, which was doubled due to his prior strike.  On the receipt of stolen property conviction, defendant received a stayed, concurrent two-year term, also doubled due to the prior strike.  An additional four years were imposed for defendant's prior prison commitments.

### *Marsden*[3] **Hearing**

During a *Marsden* hearing[4] on July 2, 2012, defense counsel said that earlier that day, his client's friend had delivered a letter written by Peter Joice.  Defense counsel read the letter into the record as follows:

> "My name is Pete Joyce [*sic*]. I am the owner of Paper Cabin Property.  I understand that Mark Miale is being charged for removing scrap metal from my property.  I am not – will not press charges on anyone for removing this said property.  I also have no desire to reclaim this said property.  If you have any questions, please feel free to contact me.  Sincerely, Peter Joyce [*sic*]."

**Prosecution's In Limine Motion**

At an in limine hearing on the morning trial began, the prosecutor said that defense counsel had spoken to Joice earlier that morning.  Defense counsel had conveyed that Joice had told a Mr. Modrell and a Mr. Spregans[5] that anyone could take "the

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

[4] We previously granted a motion to unseal several pages of the *Marsden* hearing transcript.  We only discuss the information contained on those unsealed pages.

[5] The record contains at least two spellings of Mr. Spregans's name, the other being "Spriggins."

items."[6]  The prosecutor argued that because the two names had only been provided minutes ago, the prosecution had no opportunity to "track down" the two named individuals, interview them, or check their criminal histories.  Consequently, the prosecutor moved to exclude "any sort of reference to that story and those individuals" because it was irrelevant and the two names had been provided to the prosecution so late.[7]

Defense counsel responded that he was not going to call Modrell or Spregans as witnesses.  Defense counsel only wanted to ask whether Joice had made it known to the community "that the property on that mine was abandoned and people could take it."

The court granted the prosecutor's motion, excluding questions regarding whether or not Joice "made representations to the community in general, or to any specific individuals."  The court reasoned that it was "unfair to the prosecution at this late stage to bring up names of individuals who … basically are going to be testifying without being subject to cross examination, and they haven't had a chance to interview these witnesses and check their criminal history."

## TRIAL

Robert Anzar testified that on February 24, 2012, he was with a friend at Paper Cabin Ridge.  Anzar and his friend noticed a pickup near Paper Cabin.  Anzar saw that in the back of the pickup was a cable winch drum that had been near the cabin two weeks before.  Anzar also observed a spring bed toward the back of the pickup.

---

[6] Contextually, it is clear "the items" refers to the metal objects defendant was accused of stealing.

[7] The prosecutor also moved in limine to exclude any evidence that Joice did not want defendant to be prosecuted.  Defense counsel said he had "no problems with not mentioning anything about whether or not Peter Joice desires to press charges or does not desire to press charges."

Anzar came down the hill, approaching two men near the pickup. The men were dragging the spring bed over to the truck. Anzar asked the men what they were doing and they said, "Oh, we're just cleaning up the place." Anzar thought the men were actually stealing the items and called the Forest Service.

Lynne Bird, an officer with the Forest Service, responded to Anzar's report. Anzar provided a physical description of the pickup and a partial license plate number. Bird waited at an intersection for the pickup to arrive.

Eventually, Bird began to travel up Buchanan Mine Road towards Engles Ranch. Less than a quarter mile from where Bird had been waiting, she located the pickup. Bird saw that the pickup matched the physical description and partial license plate number Anzar had provided. The pickup was loaded with metal objects.

Defendant was driving the vehicle and there was another occupant, codefendant Carl Holm. Bird waved down the pickup. Bird asked defendant where he had "gotten the metal objects" in the back of the pickup. Defendant said he had taken the metal from Engles Ranch[8] with permission. Bird told defendant that she had received a report of two individuals having taken property in the Paper Cabin Ridge area, and that he and his passenger matched the physical description. Upon further questioning, defendant said he was "just scrapping metal off the side of the road." Bird asked if he had the owner's permission to take the items, and defendant said he did not. Defendant did not claim the property was abandoned. Holm did not say anything to Bird during the encounter.

Special Agent Kent Delbon with the Forest Service was dispatched to the scene. Delbon saw a large drum in the back of the pickup along with "some metal pipe," an ore cart track, a spring bed, and other "odds and ends of metal."

---

[8] The testimony indicated that Bird estimated Engles Ranch to be seven and one-half to eight miles away from Paper Cabin.

Holm told Delbon that he found the metal items about 100 yards beyond the cabin.[9]

Days later, Anzar went back to the area and found the bedspring frame and a big steel rod in the middle of the road about half a mile from each other.

**Peter Joice's Testimony**

Peter Joice's family has owned the Paper Cabin area and mine site for decades. The mine has historical significance because it dates back to the Gold Rush.

Prior to February 24, there was a large steam donkey drum[10] on Joice's property. Joice kept his drum in front of the cabin to the right side of the road. He had not been to the property since 2006, but his friends would go to the cabin at the beginning and end of deer season every year.

There was an old dump on the property in which scrap metal was placed, but the metal items in the back of defendant's pickup[11] did not come from the dump. The drum, for example, was "30, 35 yards" away from the dump. Joice testified that he did not abandon the drum and did not give defendant or Holm permission to take it.

On cross-examination, defense counsel asked Joice whether mining was possible on the property today. Joice replied affirmatively, after which defense counsel asked whether the federal government had "put a stop" to mining on the property. The prosecutor lodged a relevance objection, which the court sustained. At a sidebar, defense counsel argued the issue was relevant because it was an "indication that all the stuff is abandoned because they no longer use it because you can't use it to mine." The trial court did not alter its ruling sustaining the relevance objection.

---

[9] Presumably, Paper Cabin.

[10] Steam donkeys were devices used by logging companies to haul logs uphill.

[11] By "defendant's pickup" we mean the pickup defendant was driving on February 24, 2012. Defendant had actually borrowed the pickup from someone else.

**Archaeologist's Valuation**

An archaeologist testified that she estimated the drum was more than a century old and worth an estimated $25,000.

**Defense Case**

Defendant testified that in February 2012, he was involved in the scrap metal "business." Specifically, he would "grab metal, scrap it; take it down to Modesto and sell it to the scrapyards." On February 24, defendant's plan was to drive the forest roads and "look alongside the roads" and "pick up metal out of garbage dumps." Defendant asked Holm if he wanted to take a ride out on "the back roads." Holm paid for the gas for the trip.

When the day began, there was already some scrap metal in the back of the pickup. Eventually, defendant drove to the area of Cottonwood and Buchanan Road. They would "stop periodically and pick[] stuff up" near Engles Ranch. After leaving the area of Engles Ranch, defendant and Holm drove on to the Paper Cabin property. Defendant "went over … where the dump site is." Defendant hauled pipes and a piece of ore cart track up to his truck. He intended to sell the metal to a scrap yard.

Defendant testified that "beyond [the dump site], there is a camper, a trailer somebody had pushed over the edge, and a bunch of pipes, and that's actually where I got the ore cart track – one. Not any more than one. There was only one and it was bent in half, and I pulled that stuff up the hills by myself."

Defendant explained the ore cart track was sticking out of the ground.

The following exchange occurred during defendant's testimony:

"[Defense counsel:] So what made you think you were entitled to have this piece of ore cart track?

"[Prosecutor:] I'm going to object. This goes to the subject of our motion, I believe.

"[Defense counsel:] It does not, Your Honor.

"THE COURT:  Counsel, I assume you have talked to your client about the nature –

"[Defense counsel:]  He's not going to testify to any hearsay.

"THE COURT:  All right.  [¶]  I'll overrule the objection.

"[Defendant:]  You want to repeat the question for me?

"[Defense counsel:]  What made you feel that you were entitled to go pick up this piece of ore cart track and sell it for scrap?

"[Defendant:]  I had talked to numerous rangers.

"[Prosecutor:]  Objection.

"THE COURT:  All right.  [¶]  I'm going to sustain the objection.  [¶]  Counsel, you want to approach?"

At a sidebar, the court reiterated:  "That is clearly going to involve the same kind of testimony which you want from Mr. Joice, which I prohibited.  I'm not going to allow him to testify that he talked to other people and found that it was free for the taking."

Once the sidebar concluded, direct examination resumed:

"[Defense counsel:]  Mr. Miale, we talked about you not repeating what other people told you, correct?

"[Defendant:]  Correct.

"[Prosecutor:]  Your Honor, I'm going to object to this.  This is so improper.

"THE COURT:  Just ask the question.

"[Defense counsel:]  This piece of ore cart track, did you feel this property was abandoned?

"[Defendant:]  Yes, I did.

"[Defense counsel:]  Could you tell us why?

"[Prosecutor:]  Objection.

"THE COURT:  I'm going to sustain the objection."

8.

In addition to the ore cart track, defendant took some all-thread steel, pipes, pots, pans, stove parts, bed springs, and "a whole bunch of different metal" he thought was junk. Defendant also took the drum. It weighed 2,000 to 2,500 pounds, so defendant used a chain hoist to get it into his truck.

At some point, two men showed up at the property. Defendant heard the two men "acting aggressive towards" Holm. Defendant responded to the men aggressively, asking them "what business of it was theirs … for wanting to know why we're out there." Defendant ultimately told them he was out there scrapping metal. Eventually, defendant loaded up his truck and left. He was eventually stopped by law enforcement.

Defendant admitted he did not own the Paper Cabin property and did not know Peter Joice.

**Prior Offenses**

Defendant suffered previous convictions for assault (in 1992), receiving stolen property (in 1993), possession of methamphetamine for sale (in 1997 and again in 2002).

**Juror's Note**

After the prosecutor's closing argument and before defense counsel's closing argument a juror sent the trial court a note with three questions. The note read:

"(1) Does the defendant have to assume an item is owned by someone forever[?]

"(2) What constitutes proof of ownership?

"(3) At what point can an item be considered abandoned or available for salvage?"

The court told the jury that counsel would try to address these issues in argument, but "we can't open the case at this point to take further testimony on these issues …."

As noted above, the jury ultimately convicted defendant on both counts.

9.

## DISCUSSION

Defendant contends the trial court violated his constitutional rights by prohibiting cross-examination of Joice regarding "any statements or communications he made to individuals which indicated an abandonment of the personal property." Defendant focuses on three issues: (1) the letter purportedly written by Joice indicating he did not wish to press charges or reclaim the property; (2) the issue of whether mining could be done at the property in 2012 and (3) prior statements purportedly made by Joice indicating that the metal on the property was abandoned and free for the taking.

### Law

A criminal defendant has a constitutional right to confront adverse witnesses. (*People v. Louis* (1986) 42 Cal.3d 969, 982.) "The primary purpose of the constitutional guarantee is to ensure that the defendant is able to conduct a 'personal examination and cross-examination of the witness ….' " (*Ibid.*)

The right to cross-examination is not absolute, however. (*People v. Louis*, *supra*, 42 Cal.3d at p. 983.) For example, the "sixth amendment right to cross-examine adverse witnesses does not empower a defendant to pursue irrelevant inquiries …." (*United States v. Brown* (9th Cir. 1991) 936 F.2d 1042, 1048.) A trial court " 'retains wide latitude in restricting cross-examination that is … of marginal relevance.' " (*People v. Hillhouse* (2002) 27 Cal.4th 469, 494.)

### Joice's Letter and Feasibility of Mining Issues

As to Joice's letter and the issue of whether mining could be done at the property, the flaw in defendant's argument is his characterization of these issues as "indicat[ing] an abandonment of the personal property." Joice's letter does not indicate that he had abandoned the metal taken by defendant. The letter merely indicated that he did not want to press charges or reclaim the property.

Similarly, whether mining could be performed at the property does not speak to whether the metal was abandoned. Joice never claimed the drum was being used for

10.

mining. Rather, Joice testified that the area had historical significance, and that he simply enjoyed having the steam donkey drum on the property. Consequently, the fact that mining could not be performed on the property was, at most, marginally relevant. Consequently, the trial court retained discretion to restrict cross-examination on the subject. (See *People v. Hillhouse*, *supra*, 27 Cal.4th at p. 494 [trial court retains " 'wide latitude' " in restricting cross-examination that is of marginal relevance].)

In sum, Joice's purported letter and the suitability of the land for mining did not "indicate[] an abandonment of the personal property" as defendant claims. Both issues were, at most, marginally relevant and thus subject to restricted cross-examination at the discretion of the trial court. (See *People v. Hillhouse*, *supra*, 27 Cal.4th at p. 494.)

**Joice's Alleged Statements Regarding Abandonment**

Defendant was also prohibited from questioning Joice about whether he had made statements to members of the community that the metal on his property was abandoned. This issue is different than the two we analyzed above. If Joice indeed made such statements, that fact could have been highly relevant to defendant's case. Indeed, abandonment was the primary defense theory.

Respondent's initial brief contained minimal analysis of this particular issue.[12] She argued: "As the trial court indicated, questioning Joice about any statements he

---

[12] Respondent's brief contains no argument regarding the trial court's primary justification for its in limine ruling: late discovery. The trial prosecutor and lower court were primarily concerned with the fact that Modrell and Spregans's names had not been made known to the prosecution until the morning of trial. Because respondent's brief did not address this late-discovery issue, we invited additional briefing on the topic. In response to that invitation, the Attorney General argued that "the trial court's limitation on Joice's cross-examination regarding his alleged statements to members of the community was proper as a discovery sanction." We conclude otherwise.

Even if the defense's disclosure of Modrell and Spregans's names on the morning of trial constituted a discovery violation, the limitations on the cross-examination of Joice were not the proper response to such a violation. First, " '[i]f the truth is to be served, the failure to disclose, at least where not wil[l]ful, should not be punished by the suppression

11.

might have made to the community was improper because appellant was not planning on calling any witnesses to introduce such evidence." The Attorney General's argument is not explained further and is perplexing at best. At the in limine hearing, defense counsel said he intended to ask Joice whether he had "made it known to the community … that the property on that mine was abandoned and people could take it." Surely, Joice was competent to testify on that issue even without the testimony of other witnesses. The Attorney General provides no applicable legal authority for the proposition that a witness may not testify to his own prior statements unless those who heard the statement also testify.

Next, the Attorney General argues the evidence would have been irrelevant absent evidence the statements were communicated to defendant. But defendant was prevented from producing such evidence.[13] Defense counsel asked defendant why he believed he could take metal from the property, prompting an objection from the prosecutor. At a sidebar, the court observed that it had prohibited certain testimony from Joice and defense counsel was now trying to obtain that testimony from his own client. The court ruled that defendant *could not testify "that he talked to other people and found that it was free for the taking."* (Italics added.) The Attorney General cannot fault defendant for failing to produce evidence that he "talked to other people and found [the metal] was free for the taking" when he was explicitly prohibited from doing so.

---

of evidence, but by giving the offended party a proper opportunity to meet the new evidence.…' [Citation.]" (*People v. Reyes* (1974) 12 Cal.3d 486, 502.) Moreover, even if some type of evidentiary sanction had been warranted, it should have been limited to preventing Modrell and Spregans from testifying. But the prosecution's inability to interview or investigate Modrell or Spregans does not justify preventing *Joice* from testifying as to his *own* alleged statements.

[13] In a declaration offered in support of his motion for a new trial, defendant stated that he *did* have conversations with people in the community regarding the property allegedly being abandoned.

In sum, none of the rationales raised by the prosecution or the trial court justified the limitation imposed on the defense's cross-examination of Joice.[14] Imposing that limitation was error.

**Prejudice**

"A verdict … shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice .…" (Evid. Code § 354.) We are of the opinion that the erroneous exclusion of evidence in this case was prejudicial.

Defendant did not deny removing the metal from the property. Instead, defense counsel argued that defendant thought the property was abandoned when he took it. Thus, abandonment was the core defense theory advanced at trial. Near the end of closing argument, defense counsel summarized his theory of the case:

> "When you look at all these other facts, you can see that my client did not have the intent to steal. 'If the defendants' conduct would have been lawful under the facts as he believed them, he did not [the] crime of…' receiving stolen property '—because he didn't believe the property had been stolen. He believed it to be abandoned."

Nonetheless, defendant was prevented from producing evidence on two important issues underpinning that theory: (1) whether Joice told members of the community that the property had been abandoned, and (2) whether defendant "talked to other people and found that" the metal "was free for the taking." Together, these issues were highly relevant to the primary theory advanced by the defense. Moreover, the juror note

---

**14** We invited additional briefing asking whether the court's limitation on cross-examination could be upheld as a proper application of the hearsay rule. We conclude that the hearsay rule is inapplicable. The prosecutor's motion in limine was based on relevance and late-discovery grounds, not the hearsay rule. The People therefore forfeited any hearsay objection. (See *People v. Johnson* (2013) 222 Cal.App.4th 486, 493; *People v. Mullens* (2004) 119 Cal.App.4th 648, 669, fn. 9.)

13.

indicates that at least one juror had focused on the abandonment issue even before defense counsel made closing arguments. We cannot conclude the limitations imposed by the trial court were harmless.[15]

**DISPOSITION**

The judgment is reversed.

_____
Poochigian, Acting P.J.

WE CONCUR:


_____
Peña, J.


_____
Chittick, J.[*]

_____

[15] As a separate claim of error, defendant argues that certain comments made by the prosecutor during argument were prejudicially erroneous. We need not conclusively determine whether the comments were erroneous, given how we resolve defendant's first contention. However, regardless of whether the prosecutor's comments were erroneous, they do factor into our analysis of whether the cross-examination limitations were prejudicial.

During rebuttal argument, the prosecutor argued: "You have to prove that an owner intentionally, vocally, and openly abandoned the piece of property. So if [defendant] really thought and Mr. Holm really thought that this mine and this historic site was abandoned, they needed to take efforts to determine whether the owner – first of all, who it was, and whether they really intended to abandon those items. They never did that. They never contacted the forest service."

As discussed above, defendant was improperly prohibited from offering evidence about any efforts he may have taken to determine whether the owner intended to abandon the metal. The prosecutor's argument highlighted the absence of evidence on this issue, thereby amplifying the prejudicial effect of the court's earlier rulings.

[*] Judge of the Superior Court of Fresno, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14.