Filed 7/14/15  P. v. Williamson CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL WARREN WILLIAMSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B258889<br>(Super. Ct. No. 2008032793)<br>(Ventura County) |

Michael Warren Williamson appeals a judgment after conviction by jury of committing a lewd act against his stepdaughter, A. (Pen. Code, § 288, subd. (a),[1] count 8); five lewd acts against his step-granddaughter, S. (§ 288, subd. (a) counts 1, 2, 4, 6, and 7); aggravated sexual penetration of S. (§ 269, subd. (a)(5), count 3); and aggravated rape of S. (§ 261, subd. (a)(2), count 5).  The jury found true allegations that Williamson had substantial sexual conduct with a victim who was under the age of 14 as to counts 1, 2, 4, 6 and 7 and that he committed an enumerated sex crime against more than one victim.  (§§ 1203.066, subd. (a)(8), 667.61, subds. (b), (e)(4).)  The trial court sentenced Williamson to a determinate term of eight years, plus an indeterminate term of 75 years

---

[1] All statutory references are to the Penal Code unless otherwise stated.

to life in state prison.[2]  It ordered him to pay $200,000 to A. and $400,000 to S. as victim restitution for noneconomic losses.

Williamson contends the trial court abused its discretion when it admitted evidence that he also molested his stepdaughter C. and his stepson R., and when it awarded noneconomic restitution.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Williamson was married to his second wife, Sylvia, from about 1984 to 1991.  Sylvia had a son, R., who was a baby when they married (Williamson's stepson.)

In 1992, Williamson married Lydia who had four children:  A., C., B., and J. (Williamson's stepchildren).  J. later had a daughter named S. (Williamson's step-granddaughter).

Sometime before 1991, Williamson blindfolded R., put his penis in R.'s mouth, and told R. to pretend it was a popsicle.  With no pants on, he chased R. around the floor.  When R. later told Williamson he did not want to do that again, Williamson stopped.  R. did not tell anyone about the incident until 2011.

From 1992 to about 1996, Williamson molested A.  Williamson was a police officer for the City of Oxnard and was in uniform during the first incident.  A. testified that he was a strict disciplinarian and hit the children with a belt.  A. testified that Williamson had sexual intercourse with her at least twice a week from the time she was 13 years old until she was 17.  He sometimes used force.  He choked her several times during intercourse.  He told her that his lust for her overcame his love for her. Williamson told Lydia about the first kiss.  Lydia did not report it and told A. to be careful what she wore and did around Williamson.  A. did not tell anyone about the abuse until 2000.  She did not report the abuse to law enforcement officers until 2008.

---

[2] The sentence consisted of an eight-year upper term for count 8 (lewd act against A.) and five consecutive terms of 15 years to life for counts 1, 2, 3, 5, and 7 (two lewd acts against S., the sexual assault of S., and the rape of S.). The trial court stayed two terms of 15 years to life for the remaining two lewd acts against S. pursuant to section 654.

In 1997, A.'s sister C. awoke to find Williamson rubbing her breasts. Williamson kissed her lips. She cried and Williamson apologized. They both told Lydia. A social worker from Ventura Child and Family Services (CFS) investigated. C. and Williamson each underwent therapy. No further action was taken. The trial court allowed evidence that CFS took no further action. It did not allow the CFS social worker to offer an opinion about the results of the investigation. The social worker testified at trial and described her interviews with Williamson, C., A., and Lydia. An Oxnard police sergeant testified that she searched the Oxnard police department's records and did not find a record of an investigation.

In 1996, J.'s daughter, S., was born. Williamson helped care for her. He molested her almost daily from 2004 to 2008, consisting mainly of lewd touching and masturbation. He sometimes used force. She was afraid of him because he was a police officer who had weapons. She was afraid to report the abuse because Williamson owned the house in which her family lived. He raped her once. In 2008, she told C. about the abuse, and C. told the family. J. reported it the Oxnard police department. Williamson was arrested.

In the course of the investigation, A., C., and R. came forward about Williamson's abuse.

An information charged Williamson with sexual offenses against A. and S. The trial court allowed evidence of his uncharged sexual offenses against C. and R. pursuant to Evidence Code section 1108, over Williamson's objections. All four victims testified about Williamson's sexual abuse.

A psychologist testified for the prosecution about "child sexual abuse accommodation syndrome." She testified that a man who molests a young boy is not necessarily homosexual; the attraction is to a small body rather than to gender. She said that a child molester may have age appropriate sexual relationships.

Williamson testified in his defense. He said he had no sexual activity with any of the children. He said he once rubbed C.'s chest and back with "Vicks VapoRub" and gave her a fatherly kiss, but he was not sexually aroused. He acknowledged that in

3

1991 the Oxnard police department reprimanded him for engaging in sexual activity with a stripper while on duty and that he was unfaithful to his wives.

Williamson's brother Rick, Rick's wife, and Rick's daughter testified that they never saw Williamson do anything inappropriate with the children. Williamson's biological children, and other people who knew him, testified that they never saw him engage in inappropriate sexual activity and they did not suspect that he molested anyone. S.'s biological grandfather testified that she had a history of lying. A defense expert testified that many reports of child sexual abuse are false.

DISCUSSION

*Evidence of Prior Uncharged Molestation of C. and R. (§ 1108)*

Williamson contends his conviction must be reversed because the evidence of his uncharged sexual offenses against C. and R. was unduly prejudicial. (Evid. Code, §§ 1108, 352.) We disagree. As the trial court observed, the uncharged conduct was much less egregious than the charged conduct and was relevant to show Williamson's "lack of appreciation of boundaries for . . . extended family members, and [tendency] to use them in sexually inappropriate ways for [his] own gratification."

Evidence Code section 1108 permits the jury in a sex offense case to consider evidence of prior sexual offenses for any purpose, subject to the trial court's power to exclude unduly prejudicial evidence under Evidence Code section 352. (*People v. Loy* (2011) 52 Cal.4th 46, 60.) The provision is constitutional. (*Id.* at pp. 60-61.) "'[E]vidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of Evidence Code section 1101.'" (*Id.* at p. 63.)

In exercising its discretion to admit evidence of an uncharged sexual offense, the trial court must consider such factors as the nature of the offense, its relevance and possible remoteness; the degree of certainty of its commission; the likelihood of confusing, misleading, or distracting the jurors from their main inquiry; similarity to the charged offenses; any likely prejudicial impact on the jurors; the burden on the defendant in defending against the uncharged offense; and the availability of less

4

prejudicial alternatives to its outright admission, such as limiting the number of other sex offenses, or excluding irrelevant and inflammatory details surrounding the offense. (*People v. Loy*, *supra*, 52 Cal.4th 46, 61.) Here, the record as a whole demonstrates that the trial court carefully performed its balancing function. (*People v. Taylor* (2001) 26 Cal.4th 1155, 1169.)

Evidence that Williamson rubbed C.'s breasts while she slept was relevant to prove his propensity to commit lewd acts on his stepchildren and granddaughter. It is not particularly inflammatory compared to the charged offenses that include rape and sexual assault of children. It was a single touch and a brief kiss. C. told the social worker "nothing like this had ever happened before." The incident was not remote; it occurred just after Williamson stopped abusing C.'s sister, A. The testimonies of C. and the CFS worker were relatively brief and were in some respects helpful to the defense. In the CFS interviews, C. minimized the incident and "A. denied any sexual improprieties by her stepfather." The incident was unlikely to generate undue confusion and was not particularly burdensome on Williamson's defense. Williamson contends that the evidence of his offense against C. was unduly prejudicial because it was unsubstantiated and he was "never found to have committed the crime." But if C.'s account were true, the incident was a crime. (§ 288, subd. (a).) It was admissible even if no charges were filed. (See *People v. Mullens* (2004) 119 Cal.App.4th 648, 664-665.) To rebut the evidence, the trial court also admitted evidence that no action was taken in response to C.'s report. As the trial court observed, "[I]t may be . . . what was actually reported to children's services was somewhat diminished . . . because of the defendant's request not to report this and because of the pressure of the family dynamic . . . . But that's up to the jury." The court did not abuse its discretion when it allowed the jury to consider the evidence.

Evidence of Williamson's offense against R. tended to show Williamson's propensity to commit lewd acts on his stepchildren. It involved a "popsicle" ruse similar to one Williamson used with S. S. testified that Williamson once told her to suck his finger "like it was a popsicle." The single incident of oral copulation with R. was less inflammatory than the charged offenses. R. testified that Williamson once blindfolded

him, put his penis in R.'s mouth and told him to pretend it was a popsicle, and later played a game of chase with him. When R. told Williamson he did not want to do that again, Williamson stopped the behavior. This incident was not remote; it occurred within a few years of 1992, when Williamson began molesting A. R. was born in 1983; he said it happened when he was school-aged, but before he was eight years old. The evidence was relatively brief and did not impose an undue burden on the defense.

Williamson contends that evidence of his offense against R. was especially inflammatory because it involved a male child. We do not accept Williamson's premise that a man's sexual abuse of a boy is more inflammatory than his abuse of a girl. Williamson argues that homosexuality is highly inflammatory, but the prosecution did not present any evidence of homosexuality. If the molestation of a male child had any tendency to inflame an uninformed juror's prejudices against homosexuals, this was mitigated by the expert's testimony that child molestation is not gender based.

*Restitution for Noneconomic Damage*

Williamson contends the noneconomic restitution awards must be reversed because they are not supported by a factual and rational basis. He applies the wrong standard.

A trial court may award restitution to a victim of child molestation to compensate for "[n]oneconomic losses, including, but not limited to, psychological harm." (§ 1202.4, subd. (f)(3)(F).) We review restitution awards for economic loss for a "rational basis." (*People v. Giordano* (2007) 42 Cal.4th 644, 664.) But the standard is different for noneconomic loss, the calculation of which requires "more subjective considerations." (*People v. Smith* (2011) 198 Cal.App.4th 415, 436.) We therefore affirm restitution orders for noneconomic damages that "do[] not, at first blush, shock the conscience or suggest passion, prejudice or corruption on the part of the trial court." (*Ibid.*; *id.* at p. 437 [affirming an award of $50,000 per year for 15 years of suffering, although the convictions spanned only seven years of abuse].) The awards of $200,000 to A. and $400,000 to S. do not shock the conscience or suggest passion, prejudice, or corruption.

6

A. suffered four years of sexual abuse from her stepfather. Williamson was a man she trusted and thought was "nicer" than her own father. He took her virginity when she was 13 years old and regularly forced her to engage in intercourse and other sex acts with him until she was 17. He choked her several times during intercourse. He damaged her relationship with her mother. Lydia admonished A. to be more careful around Williamson when she learned about the first incident, and A. expressed anger about this at trial. An award of $200,000 for A.'s suffering does not shock the conscience.

S. was even more severely abused. Williamson forcibly raped and digitally penetrated her. He molested her continuously for four years. She knew him as her grandfather, and she believed she had to submit to the abuse because her family had nowhere else to live. She testified she was afraid of him because he was a police officer with weapons. She told a probation officer that, as a result of Williamson's abuse, she has intimacy issues and mood changes, and she dropped out of high school. An award of $400,000 for S.'s suffering does not shock the conscience.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

7

Charles W. Campbell, Jr., Judge

Superior Court County of Ventura

_____

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Timothy M. Weiner, Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.