Filed 9/17/21  P. v. Perez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C092217 |
| Plaintiff and Respondent, | (Super. Ct. No. MANCRFECOD20160008687) |
| v. | |
| ERIC FRANK PEREZ, | |
| Defendant and Appellant. | |

A jury found defendant Eric Frank Perez guilty of sexual intercourse or sodomy with a child under the age of 10 years old and the commission of a lewd act upon a child under the age of 14 years old.  Sentenced to 25 years to life in state prison, defendant now contends the trial court abused its discretion by admitting evidence at trial of:  (1) a 22-year-old prior indecent exposure conviction under Evidence Code section 1108;[1] and

---

[1] Undesignated statutory references are to the Evidence Code.

(2) the state licensing board's decision to prohibit defendant's presence at a day care facility.  We shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

C., a then six-year-old girl, had attended Jeanette Lewis's in-home day care since she was eight months old.  At some point in time, Lewis became romantically involved with defendant and he moved into the in-home day care with Lewis.  C. and her mother were close with Lewis, defendant, and their children.

One day in June 2016, C.'s mother picked her up from day care and noticed C. was unusually nervous and fidgety.  C.'s mother asked her what was wrong, and after saying "nothing" several times, C. told her mother and her mother's cousin that defendant had done something to her that day, and described a sexual assault.  C.'s mother felt very upset.  She asked C. numerous times what had happened, asking open-ended questions, and C. told her the same story every time.  When C. tried to go to the bathroom, she looked scared and said it "hurt to poop."

The next morning, C.'s mother asked her again what happened, and C. repeated the details of defendant's sexual assault.  C.'s mother immediately took her to the hospital and requested a police officer.  C.'s primary complaint at the hospital was that "she hurt from her pee hole to her butt."  Given the suspected sexual abuse, Manteca Police Officer Benedict Jemerigbe came to the hospital and took C.'s statement.  Shortly thereafter, a forensic examiner interviewed C.

C. told the forensic examiner that she had been swimming outside at day care with two other children when defendant called her in the house.  C. came inside, and defendant took C. into Lewis's daughter's bedroom.  C. turned around and defendant put cream on her "butt."  He also put cream on his "wiener."  C. said that defendant put his "wiener" inside her "butt," describing that he got down on her and "squeezed" her.  She felt him "squeeze[] [her] so hard" that she cried from the pain and called out for help.  He slowly wiped her "butt" and "squeezed [her] butt . . . all the way inside again" and then was

2

done.  C. also "play[ed] with his wiener" by going back and forth.  Defendant wiped C.'s "butt," went to the bathroom, and zipped up.

C.'s interview with Officer Jemerigbe was largely consistent with her forensic interview.[2]  However, she told Officer Jemerigbe that she spread her legs into the splits as defendant stood behind her and put his penis "all the way to [her] butt."  C. also told Officer Jeremigbe that defendant put his penis where she "go[es] pee," and did not mention touching his penis.  She said that defendant had her go to the bathroom afterwards, and that she tried to "go potty [but] it hurt."

C. also had a medical examination.  She told the medical examiner that " 'somebody did touch me down there.  And it hurt when he did it, but it doesn't hurt now.' "  The medical examiner testified that C. had a small white line on the bottom of her vaginal area on the anal side, which could have been caused by a man's penis and was one of the most common spots where injuries occur in a sexual assault.

C. testified at trial.  She said that she used to swim at a house but she stopped going there "[b]ecause something bad happened."  Although C. said she did not like to talk about it, she said that an adult man named Eric did something bad at her babysitter's house.  C. identified Eric in a photograph as the man who did something bad to her.  She said that the bad thing that happened did not involve her body.

Lewis "disappeared" the evening of the incident, and defendant did not know where she went.  He left numerous apologetic voice mails and text messages for Lewis.  Defendant left one message saying, "I understand  you don't want anything more with

---

[2]     Officer Jemerigbe admitted on cross-examination that, contrary to his training, he used leading questions, asked compound questions, did not ascertain whether C. knew the difference between the truth and a lie, did not ascertain whether C. understood the difference in time or dates, and allowed C.'s mother to be present in the room and interject during the interview.  Officer Jemerigbe also did not confirm C.'s use of words for different private parts.

me," and another that said, "I'm so sorry I hurt you. I don't know how to make it up to you. I'm dying inside." Defendant went down to the Manteca Police Department on his own volition and asked to speak with the police. Prior to doing so, he left Lewis a voice mail saying, "I'm sorry. I was so stupid."

Once defendant arrived at the police station, Manteca Police Detectives David Bright and Joshua Gutierrez interviewed defendant, and the interview was played for the jury. During the interview, defendant first denied the allegations, saying he was outside working on the deck and watching the children in the pool on the afternoon of the incident. However, defendant's demeanor became more emotional and he began to fight back tears. He eventually said that he would "take the blame for whatever it is. I'm just here to protect my kids." Defendant stood up to be handcuffed, but one of the detectives said there was no need. Defendant admitted that he went inside the house with C. and "pulled the things down" and handed her a wipe. He further admitted he put lotion on her anus and "wiped it on her butt," but denied playing with his penis or climbing on top of her. However, defendant then said he took his penis out "like when you go pee" and put his penis in her "butt." He explained he had "wanted some all day long" with his wife, but she kept saying not right now. Defendant said he was beating himself up about it. He lamented losing his family because of this "stupid mistake," and said he did not want to live anymore. Defendant heard that people get killed in jail, but said, "It's okay. I asked for it. I'm ready."

After defendant had been in jail for several days, detectives recorded a phone call between defendant and his young children, in which defendant said he was in jail because he "did bad things [and] I need to take care of it."

An investigation of defendant's home revealed a bottle of lotion in the bathroom. The child's bedroom where C. said the assault occurred was "completely empty."

At trial, defendant denied going inside the house with C. on the day of the incident. Rather, defendant said that he worked on the deck outside that day. Lewis

4

came out to swim with the children and then went inside the house, so defendant stayed outside while the children swam. At one point, C. asked to go inside to use the bathroom, so he opened the pool gate and security door to allow her in the house. When she was finished, she called, "done," came outside, and continued swimming. Defendant said that C. and her mother fabricated the allegations against him because several days before the alleged assault, he had reported C.'s father and neighbor to a narcotics detective for selling drugs. The narcotics detective confirmed that defendant had tipped detectives off that his neighbors were selling drugs, but said that although defendant gave a vehicle description, he did not mention C.'s father.

Defendant explained that he confessed during the police interview because he thought C.'s family was targeting him based on the information he gave the detective, and he wanted to protect his own family.

Lewis's mother, a nurse, testified that C. had multiple abscesses on her buttocks and perineal area as an infant, which she noticed during a diaper change. She further said that in her experience, defendant had always been respectful to her, Lewis, and his children.

The jury found defendant guilty of sexual intercourse or sodomy with a child under the age of 10 years old and the commission of a lewd act upon a child under the age of 14 years old. The trial court sentenced defendant to 25 years to life for the sexual intercourse or sodomy conviction and imposed but stayed an eight year sentence for the lewd act upon a child conviction per Penal Code section 654.

## DISCUSSION

### I

### *Uncharged Prior Sexual Offense And Day Care Issue*

Defendant contends that the trial court abused its discretion by admitting evidence of defendant's indecent exposure. He argues his prior sexual offense was remote in time and dissimilar from the charged offenses, such that it was not probative as propensity

5

evidence. As a result, defendant argues evidence of his indecent exposure was prejudicial under section 352. The People counter that defendant's prior sexual offense was admissible under section 1108 as relevant to his propensity for committing sex crimes and lack of impulse control. They further argue that even if the trial court erred by admitting the evidence, the error was harmless. Assuming without deciding the trial court erred in admitting the evidence, we conclude the error was harmless.

II

*Additional Relevant Background*

Over defendant's objection, the trial court admitted: (1) defendant's prior indecent exposure conviction and victim testimony from that offense as propensity evidence under section 1108, and (2) evidence that defendant's requested access to Lewis's in-home, day care facility was denied due to that conviction under section 352.

At trial, Cynthia G. testified that she worked in a hospital emergency room as an admissions representative in June of 1999. At that time, defendant was working as a private security guard in the same hospital. On the evening of June 15, 1999, Cynthia G. was on duty in the ER waiting room with her colleague, Nicci F., who worked the switchboard. Defendant, also on duty, went into the waiting room bathroom and came out "completely nude" and did a 360-degree turn. He stared at both women and Cynthia G. felt very uncomfortable. Defendant went back into the bathroom and emerged again, touching his penis. Cynthia G. felt shocked and "freaked out." Defendant said he was going to do it again the next night, but "wanted to come the next night."

Nicci F. also testified. She also said that defendant exposed his entire body to her and the admissions representative that night in the hospital, making her feel uneasy and uncomfortable.

Defendant briefly addressed the incident in his testimony, explaining that he pled guilty to the indecent exposure and that he was "young, stupid, and naive, and . . . fell for

6

a dare." He said it was inappropriate and wrong and that he has "pretty much dealt with it for the rest of [his] life."

With respect to access to a day care request, a representative from the licensing division of the California Department of Social Services testified that she investigated defendant's request for clearance to work at Lewis's day care. Defendant submitted his fingerprints for a record clearance in 2012, which was denied due to his conviction for indecent exposure in 1999, which was a "non-exemptible conviction." Defendant appealed the decision, but his appeal was denied.

### III

*Analysis*

Section 1108 permits evidence of past sexual misconduct to prove propensity to commit the charged sexual offense. (*People v. Falsetta* (1999) 21 Cal.4th 903, 911.) Uncharged misconduct is admissible if the trial court makes a preliminary determination that the evidence is sufficient for the jury to find -- by a preponderance of the evidence -- that the defendant committed an enumerated offense. (*People v. Jandres* (2014) 226 Cal.App.4th 340, 353.) Propensity evidence under this section is admissible if it is found to be more probative than prejudicial under a section 352 balancing test. (*Falsetta*, at pp. 916-917.) On appeal, admission of evidence under section 1108 is subject to a harmless error test. (See *People v. Watson* (1956) 46 Cal.2d 818, *People v. Mullens* (2004) 119 Cal.App.4th 648, 658-659 [applying *Watson* standard to an error under Evid. Code, § 1108]; *People v. Harris* (1998) 60 Cal.App.4th 727, 730, 741 [same].) To assess harmless error, we determine whether it is reasonably probable that its exclusion would have led to a different result. (*Watson*, at p. 836.)

It is not reasonably probable that excluding evidence of defendant's indecent exposure would have led to a different result. The evidence against defendant was overwhelming. C. had known defendant for years and identified him as the perpetrator, both by name and sight. Her description of the sexual assault was specific and largely

7

consistent, from when she first disclosed it to her mother, and then to the police officer and forensic investigator. C.'s version of events was corroborated by the injury in her vaginal area, as well as the lotion found in the bathroom. The empty bedroom where C. said the assault occurred implied that defendant cleaned the room after the assault. Additionally, the jury viewed the video interrogation of defendant, where he admitted that, consistent with C.'s story, he put lotion on C.'s anus, took out his penis, and put it in her "butt," because he had "wanted some all day long" from his wife. Emotional, he stood up, offering to be handcuffed. He repeatedly made vaguely incriminating statements thereafter: referring to his "mistake," telling his children he "did bad things," and apologizing to Lewis for being "so stupid." Given the strength of this evidence against defendant, it is not reasonably probable that defendant would have obtained a more favorable result before the jury absent the assumed error.

Defendant next contends that evidence that he sought, and was denied, access to Lewis's day care was improperly admitted under section 1108. However, the trial court admitted this evidence after exercising its discretion under section 352, and did not rely on section 1108. Indeed, the evidence was not used as propensity evidence, either in closing or in the jury instructions. Rather, the prosecutor used the evidence to note that defendant knew that he was not supposed to be at the day care or have contact with the children, yet he did so anyway.

To the extent defendant now claims the trial court erred by admitting the evidence under section 352, we again conclude defendant fails to show prejudice from its admission. It is not reasonably probable that the brief references to defendant's request for fingerprint clearance changed the jury's mind when viewed in conjunction with the veritable mountain of incriminating evidence presented against defendant, as discussed *ante*.

8

DISPOSITION

The judgment is affirmed.

/s/
Robie, J.

We concur:

/s/
Blease, Acting P. J.

/s/
Renner, J.