Filed 6/17/25  P. v. Luamanzo CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE LUIS LUAMANZO,<br><br>    Defendant and Appellant. | 2d Crim. No. B333115<br>(Super. Ct. No. 22CR04819)<br>(Santa Barbara County) |

Jose Luis LuaManzo appeals after he was convicted by jury of forcible rape (Pen. Code, § 261, subd. (a)(2), count 1) and rape of an unconscious or asleep person (Pen. Code, § 261, subd. (a)(4)(A), count 2).  He was sentenced to state prison for eight years.  At trial, appellant sought to impeach the victim's credibility by introducing evidence that she made prior false accusations against two different people.  The trial court excluded the evidence pursuant to Evidence Code[1] section 405 for failure to

_____

    [1] All further statutory references are to the Evidence Code unless otherwise indicated.

establish the preliminary fact that the accusations were false, and pursuant to section 352.

Appellant contends he is entitled to reversal because the admissibility of the evidence should have been governed pursuant to section 403, which would have allowed the jury, rather than the judge, to determine the veracity of the accusations. Appellant also contends the trial court abused its discretion in excluding the evidence pursuant to section 352. We conclude any error was harmless and affirm.

*Facts and Procedural Background*

Prosecution Evidence

In 2021, appellant, his wife R. Mendoza, and her two children, L.G. (victim) and Alex, lived together. The family slept in a living room that had been converted into a bedroom. L.G., who was 19 years old at the time, slept in one bed while her mother, appellant, and Alex slept in a different bed on the other side of the room.

On the night of the incident, Mendoza was working and was not at home. Around 2:00 or 3:00 a.m., L.G. awoke to a man having sex with her. L.G. initially thought it was her boyfriend, P. Gutierrez, and told him to stop. When she reached down and touched the man's hairline, L.G. realized it was not her boyfriend.

The man stopped having sex with L.G., pulled her underwear and pants back up, picked up Alex and carried him to the other bed. L.G. grabbed her cellphone, turned on the flashlight, and confirmed the man was appellant. She ran to the restroom, locked the door, and called Gutierrez, crying inconsolably.

L.G. drove to Gutierrez's house where he checked her vaginal area and found semen. L.G called her mother, father, and the police and told them all that she had been raped by appellant. Mendoza called appellant and asked what he had done to L.G. Appellant said he had not touched L.G. and everything she said was a lie. Mendoza eventually called 911.

Meanwhile, appellant called and texted L.G. He told her, "'I didn't do anything,'" suggested she was dreaming, and said he could get deported if she reported him. L.G. responded, "'That's what you get for what you did to me.'"

A registered nurse conducted a sexual assault examination and collected DNA swabs from various locations of L.G.'s body. Forensic analysis provided "very strong support" that appellant's DNA was found on these swabs.

Defense Evidence

Appellant admitted to having sex with L.G., but said it was consensual. He testified that when he returned from work and attempted to remove Alex from L.G.'s bed as he usually did, L.G. woke up, began caressing him and said, "'I want to do it.'" They began touching each other and had sex. Afterward, he felt remorseful. He picked up Alex and carried him to the other bed. L.G. calmly got up and walked to the bathroom. He heard her leave in her car.

Approximately 30 to 40 minutes later, Mendoza called him and told him that L.G. said appellant raped her. He realized L.G. had not told her mother it was consensual sex and began to call and text L.G. about possibly being deported.

Appellant believed L.G. falsely accused him of rape so that Gutierrez would not have to repay appellant the money he

3

invested into a business venture importing exotic soda from Hong Kong and China.

Exclusion of Evidence Prior to Trial

Appellant filed a written motion in limine seeking to admit evidence that in 2014, L.G accused mother's roommate, Fernando Jimenez, of inappropriately touching her when she was nine years old. Appellant attached a police report, which included L.G.'s statements that Jimenez would touch her when he was alone with her, as well as Mendoza's statement that she never left L.G. alone with Jimenez and that L.G.'s siblings were always with her. The motion also included Jiminez's statement denying that he ever touched L.G. inappropriately. The District Attorney declined to file charges due to a lack of evidence.

Appellant argued this evidence was relevant to demonstrate that L.G. "made false allegations in the previous case and then proceeded to make false allegations again in this case." The prosecutor filed a written response requesting a preliminary fact determination hearing pursuant to section 405 for appellant to establish the falsity of L.G.'s prior allegations of molestation.

At the hearing, the trial court began by stating: "[T]he Court determines the preliminary fact under Evidence Code 405, the burden of proof is by a preponderance of the evidence, and . . . that burden is on the defense." Appellant called two witnesses, Mendoza and Jimenez.

Mendoza testified that Jimenez watched the children "many times" over a period of approximately two years while she was at work. She denied telling the police that she never left the children alone with Jimenez.

Jimenez testified that he "ha[d] nothing to do with this." He never saw a police report and was not aware of the specifics of

4

the allegations. He hired an attorney and was later told the charges against him had been dropped. When asked whether he believed the allegation made by L.G. that he touched her inappropriately was false, he asserted his Fifth Amendment right to remain silent and refused to answer any further questions.

Defense counsel argued that appellant met his burden of producing sufficient evidence to show that L.G. made false allegations against Jimenez and whether the allegations were actually false was for the jury to decide. The prosecutor argued appellant had not met his burden to show that the allegations were false, and even if he had, the evidence should be excluded pursuant to section 352.

After hearing argument and considering the evidence, the trial court found that the defense had not met its burden to establish the prior allegations were false. The trial court also ruled that even if it had found the evidence admissible pursuant to section 405, it would still have excluded the evidence pursuant to section 352.

Exclusion of Evidence During Trial

L.G. testified that when she was 12 or 13 years old, her relationship with her mother had deteriorated. Defense counsel asked L.G. if she had ever retaliated against her mother by calling the police. The prosecutor objected and the trial court sustained the objection. During a sidebar discussion, defense counsel explained that appellant would testify that "years ago" L.G. called the police to report that her mother was beating her and her little brother. Counsel argued this was relevant to show that L.G. "knows how to manipulate the system" and "made a false allegation against her mother."

5

The trial court ruled the evidence was inadmissible because there was no preliminary determination of the falsity of the allegations, and pursuant to section 352, "we would turn it into a trial about what happened at another occasion rather than testimony about what occurred here."

*Evidence Code Sections 403 and 405*

Only relevant evidence is admissible. (§ 350; *People v. Lucas* (1995) 12 Cal.4th 415, 466 (*Lucas*).) Sometimes the relevance of evidence depends on the existence of a preliminary fact. (*Lucas*, at p. 466.)

"Sections 400 through 405 of the Evidence Code define the terms and set forth the procedures to be utilized where the admissibility of evidence is dependent upon the existence of a preliminary fact. As used in these sections, a '"preliminary fact" means a fact upon the existence or nonexistence of which depends the admissibility or inadmissibility of the evidence.' (Evid. Code, § 400)." (*People v. Herrera* (2000) 83 Cal.App.4th 46, 60 (*Herrera*); see *People v. Cottone* (2013) 57 Cal.4th 269, 283-284.)

Section 403 provides: "The proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact, when: [¶] (1) The relevance of the proffered evidence depends on the existence of the preliminary fact; . . . or [¶] (4) The proffered evidence is of a statement or other conduct of a particular person and the preliminary fact is whether that person made the statement or so conducted himself." (*Id.*, subds. (a)(1), (4).)

Section 405 provides, "With respect to preliminary fact determinations not governed by Section 403 . . . [¶] (a) . . . The

6

court shall determine the existence or nonexistence of the preliminary fact and shall admit or exclude the proffered evidence as required by the rule of law under which the question arises." (*Id.*, subd. (a).)

"The critical difference between the two statutes is that under . . . section 403, the court makes a preliminary determination regarding sufficiency whereas under . . . section 405, the court makes a final determination regarding existence of the preliminary fact." (*Herrera, supra*, 83 Cal.App.4th at p. 63.)

Appellant contends the trial court should have applied section 403 because the "relevance of the proffered evidence depend[ed] on the existence of the preliminary fact." The People agree but contend any error in excluding the evidence was harmless. As we shall explain, we agree with the People.

Here, the preliminary fact to be determined by the trial court was whether L.G.'s prior accusations against Jimenez and her mother were in fact false. If the allegations were true, then the proffered evidence would have no evidentiary value to impeach L.G.'s credibility. Because the relevance of the proffered evidence was dependent on the existence of the preliminary fact, section 403 applies. But even if the trial court had considered the preliminary fact pursuant to this section, the evidence still would have been excluded.

"[T]he correct standard of proof for a preliminary fact under . . . section 403 is evidence sufficient to support a finding by a preponderance of the evidence. [Citations.]" (*Herrera, supra*, 83 Cal.App.4th at p. 61.) In other words, there must be "sufficient evidence to enable a reasonable jury to conclude that it is more probable that the fact exists than that it does not." (*Ibid*.) Whether the foundational evidence is sufficiently substantial is a

7

matter within the trial court's discretion.  (*Lucas*, *supra*, 12 Cal.4th at p. 466.)  "The court should exclude the proffered evidence only if the 'showing of preliminary facts is too weak to support a favorable determination by the jury.'"  (*Ibid*.)

Here, the evidence presented by appellant fell far short of the requisite standard.  Although Jimenez testified briefly, he refused to answer any questions related to the allegations of abuse.  Mendoza's testimony established, at the very least, that Jimenez had "substantial access" to L.G.  Nothing in the record demonstrates, by a preponderance of the evidence, that L.G. lied about being inappropriately touched by Jimenez.

Thus, any error in excluding the evidence pursuant to section 405 was harmless because it was too weak to support a favorable decision by the jury and would have been excluded pursuant to section 403.  (See *People v. Watson* (1956) 46 Cal.2d 818, 836 [error is harmless unless it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].)

Appellant contends his federal constitutional rights were violated and *Chapman v. California* (1967) 386 U.S. 18 applies. We disagree.  Appellant did not raise an objection on federal constitutional grounds (*People v. Blacksher* (2011) 52 Cal.4th 769, 842) and the alleged error did not render his trial fundamentally unfair.  (See *People v. Boyette* (2002) 29 Cal.4th 381, 427-428 [attempt to "inflate garden-variety evidentiary questions into constitutional ones is unpersuasive"]; *People v. Earp* (1999) 20 Cal.4th 826, 878.)  In any event, the evidence was properly excluded pursuant to section 352, which is subject to the *Watson* harmless error test.  (See *People v. Mullens* (2004) 119 Cal.App.4th 648, 659 ["Error in the admission or exclusion of

8

evidence following an exercise of discretion under section 352 is tested for prejudice under the *Watson* harmless error test"].)

*Evidence Code Section 352*

Evidence that a sexual assault victim has made a prior report of molestation or rape is relevant to the victim's credibility, but only if the prior allegation is "proven to be false." (*People v. Miranda* (2011) 199 Cal.App.4th 1403, 1424; accord, *People v. Bittaker* (1989) 48 Cal.3d 1046, 1097, disapproved on another ground in *People v. Black* (2014) 58 Cal.4th 912, 919.) The trial court retains discretion to exclude such evidence "if the proof of the falsity of the prior complaint 'would consume considerable time, and divert the attention of the jury from the case at hand.'" (*Miranda*, at p. 1424.)

"'A trial court's exercise of discretion in admitting or excluding evidence . . . will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. . . .'" (*People v. Celis* (2006) 141 Cal.App.4th 466, 476; see *People v. Wheeler* (1992) 4 Cal.4th 284, 296 [trial court has discretion to control presentation of proposed impeachment evidence "to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues"]; *People v. Lightsey* (2012) 54 Cal.4th 668, 714; accord, *People v. Clark* (2011) 52 Cal.4th 856, 931-932.)

Appellant contends the trial court abused its discretion in excluding the prior allegation evidence because it was "central" to his defense and "highly probative" to impeach L.G.'s credibility. But the trial court found this was "the definition of [section] 352." We agree. The proposed impeachment evidence had minimal probative value and would have required a time-consuming

9

digression into matters that occurred years ago.  On these facts, there was no abuse of discretion.

In sum, appellant had the opportunity to present his defense, that he had consensual sex with L.G.  Given the overwhelming evidence of his guilt, the jury did not believe him. There was no miscarriage of justice here and no reversal is required.

*Disposition*

The judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

10

John F. McGregor, Judge
Superior Court County of Santa Barbara

_____

Adrian Dresel-Velasquez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, and William H. Shin, Deputy Attorney General, for Plaintiff and Respondent.